Argued and submitted October 27, 1986, reversed and remanded January 28, reconsideration denied March 13, petition for review denied April 21, 1987 (303 Or 332)

WADE CREDIT CORPORATION et al,
*Appellants,*

*v.*

BORG-WARNER ACCEPTANCE CORPORATION,
*Respondent.*

(A8307-04823; CA A36842)

732 P2d 76

David J. Sweeney, Portland, argued the cause for appellants. With him on the briefs were Mark B. Weintraub, Paul G. Dodds, Certified Law Student, and Gilbertson, Brownstein, Rask, Sweeney, Kerr & Grim, Portland.

Charles D. Colett, Portland, argued the cause for respondent. With him on the brief were Gary M. Galton, and Galton, Popick & Scott, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This is "The Tale of Two Tractors," Buck and Stallion, which are the subjects of a priority dispute between secured creditors in this conversion action. Plaintiffs contend that, under Article 9 of the Uniform Commercial Code, ORS 79.1010 to 79.6010, their security interests in two tractors that defendant repossessed from Hillsboro Tractorland, Inc., (debtor) are superior to defendant's security interest in the tractors, because they filed UCC financing statements covering the tractors before defendant filed its financing statement. Defendant contends that, even if plaintiffs were the first to file, it has priority, because it acquired a purchase money security interest in the tractors when it advanced funds to the debtor that the debtor in turn remitted to plaintiffs as payment for the tractors. The trial court agreed with defendant, dismissed plaintiffs' complaint and awarded attorney fees to defendant. We reverse.

Plaintiff R.M. Wade & Co. is a wholesale distributor of farm equipment. Plaintiff Wade Credit Corporation is a wholly-owned subsidiary that finances sales made by the parent company. Because the interactions between them do not affect the disposition of this case, unless it is otherwise noted, the actions of one will be considered the actions of both.

In late 1979, plaintiffs agreed to sell and finance the sale of a line of tractors which they imported and distributed to debtor for resale; debtor was, at the time, a retailer of farm equipment. Two security agreements were subsequently executed. The first gave R.M. Wade & Co. a security interest in any and all merchandise in debtor's possession acquired by it from Wade "and concerning which Wade has granted financial accommodation to debtor." The security interest secured payment for

> "the purchase of the collateral, all future advances as Wade shall elect to make to debtor, and all sums and any other liabilities of debtor to Wade, due or to become due, existing or hereafter existing."

The second security agreement gave the identical security interest to Wade Credit. Plaintiffs filed financing statements covering the agreements on December 24, 1979.

On May 9, 1980, the debtor entered into a third

security agreement. It gave defendant a security interest in the debtor's entire inventory to secure "such extensions of credit" as defendant might "decide" to extend to the debtor. Defendant filed a corresponding financing statement on May 27, 1980. It then notified plaintiffs that it had or expected to acquire a purchase money security interest in the entire inventory of S & M Motorcycles Northwest, Inc. (S & M). Although separately incorporated, S & M apparently had the same principals and business address as the debtor.[1]

On October 7, 1980, plaintiffs delivered a Model S470D "Buck" tractor to the debtor, for which the debtor executed a promissory note, payable to plaintiffs, in the amount of $4,093.66. The note was payable "on demand" or "if no demand is made, then on April 10, 1981." Defendant sent a second notice to plaintiffs, this time indicating that it had or expected to acquire a purchase money security interest in the *debtor's* inventory, and later advanced funds to the debtor in the amount of $17,009.06, of which $3,695.08 was earmarked as the "purchase amount" of the Buck tractor. Four days later, the debtor paid plaintiffs the amount owing on the Buck tractor. However, plaintiffs did not release or agree to subordinate their security interest in the tractor, which remained part of the debtor's inventory.[2]

On January 13, 1981, plaintiffs sold a second tractor to the debtor, a 1981 Mitsubishi Stallion. The debtor received possession on January 15. A promissory note for the purchase price was issued to plaintiffs by Steve's Yamaha, which was one of several trade names under which S & M did business. The note was payable on demand or, "if no demand is made, then on July 10, 1981."

On June 15, 1981, the debtor made a partial payment on the note in the amount of $5,039.86. Two days later, defendant advanced $47,189 to the debtor, $10,236 of which was earmarked as the purchase price of the Stallion. The debtor paid plaintiffs the balance owing on the note. However, it remained indebted to plaintiffs in an amount in excess of

---

[1] At trial, defendant asserted a claim to the debtor's inventory under a security interest in S & M's inventory. The trial court ruled that the security interest did not cover the inventory, and defendant does not assert the claim on appeal.

[2] Defendant does not contend that plaintiffs' security interest in the tractor terminated on payment of the purchase price under the terms of plaintiff's security agreement with the debtor.

$17,000. As before, although the note was marked "paid," plaintiffs did not release or subordinate their security interest in the tractor.

The debtor was voluntarily dissolved on November 3, 1981. It was, at that time, solely owned by S & M, which had previously purchased all of its assets and had assumed all of its liabilities. This conversion action ensued after plaintiffs attempted to repossess the two tractors from S & M and discovered that they already had been repossessed by defendant. S & M was involuntarily dissolved on December 30, 1982.

The relevant UCC priority provisions are in ORS 79.3120. Subsection (3)[3] provides that a purchase money security interest in inventory has priority over a conflicting security interest in the same inventory if (a) the purchase money security interest is perfected at the time the debtor receives possession of the inventory and (b) if certain notice provisions are met.[4] A security interest is a "purchase money

---

[3] ORS 79.3120(3) provides:

"A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory and also has priority in identifiable cash proceeds received on or before the delivery of the inventory to a buyer if:

"(a) The purchase money security interest is perfected at the time the debtor receives possession of the inventory;

"(b) The purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing statement covering the same types of inventory (A) before the date of the filing made by the purchase money secured party; or (B) before the beginning of the 21-day period where the purchase money security interest is temporarily perfected without filing or possession as provided in ORS 79.3040(5);

"(c) The holder of the conflicting security interest receives the notification within five years before the debtor receives possession of the inventory; and

"(d) The notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type."

[4] The primary purpose of granting special priorities to qualifying purchase money security interests is to enable a debtor whose inventory is subject to a preexisting perfected security interest which extends to after-acquired property to give a new lender who is willing to finance a new line of merchandise a first claim on the merchandise, notwithstanding the prior filing. *See* White & Summers, *Uniform Commercial Code*, § 25-5 (2d ed 1980). At the same time, the qualifying provisions of ORS 79.3120(3) prevent a fraudulent debtor from enticing the first-in-time creditor to advance additional credit against the new inventory, even though the debtor has already given a purchase money security interest to another creditor.

security interest" to the extent that it is:

"(1) Taken or retained by the seller of the collateral to secure all or part of its price; or

"(2) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to *acquire* rights in or the use of collateral if such value is in fact so used." ORS 79.1070. (Emphasis supplied.)

Defendant contends, and for the purposes of our analysis we assume, that the money it advanced to the debtor enabled the debtor to "maintain" rights in and "have use of" the tractors.[5] However, the money advanced by defendant did not enable the debtor to *acquire* either.[6] We conclude that the distinction is material.

In *North Platte State Bank v. Production Credit Ass'n,* 189 Neb 44, 51, 200 NW2d 1 (1972), a non-seller secured party, like defendant, had advanced funds to a debtor to be used to pay the purchase price of cattle. The court ruled:

"As we have pointed out, * * * a security interest cannot become a purchase money security interest unless it is taken by a person who by making advances or incurring an obligation gives value to enable the debtor *to acquire rights in or the use of collateral* if such value is in fact so used. Clearly, the bank could not qualify as the seller of the 79 cows. Obviously, by advancing the $20,000 and taking the mortgage it did acquire a security interest in the cows. The distinction is vital to the disposition of this case. The money advanced by the Bank enabled [the debtor] to pay the price to Seller for the cows. But it was not used by [the debtor] to acquire any rights in the cows because he already had all the possible rights in the cows he could have with both possession and title." (Emphasis in original.)

Here, as in *North Platte,* the debtor already had acquired both title to and possession of the collateral before defendant advanced it money to pay for the tractors.[7] In other words, the

---

[5] Defendant does not contend, however, that plaintiffs had demanded payment of the purchase price of the tractors before it advanced money to the debtor.

[6] Defendant does not contend that plaintiffs conditioned their willingness to sell tractors to the debtor on its ability to obtain secondary financing.

[7] ORS 72.4010(2) provides:

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes performance with reference to the physical

money that defendant advanced did not enable the debtor to acquire any use of or interest in the tractors that it did not have already. Accordingly, we conclude that defendant does not have a purchase money security interest in the tractors, and we need not decide whether the qualifying provisions set forth in ORS 79.3120(3) were satisfied.

The ranking of the parties' security interests is therefore determined under ORS 79.3120(5):

> "In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined according to the following rules:

> "(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

> "(b) So long as conflicting security interests are unperfected, the first to attach has priority."

As noted above, plaintiffs filed financing statements on December 24, 1979. Their security interests in each of the tractors were therefore perfected on the date when the debtor acquired "rights" in them. *See* ORS 79.3030; 79.2030. Similarly, defendant's security interests in the individual tractors were perfected, at the earliest,[8] on the same date. Therefore, because plaintiffs filed before defendant, their claim to the

---

delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading:

"(a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require the seller to deliver them at destination, title passes to the buyer at the time and place of shipment; but

"(b) If the contract requires delivery at destination, title passes on tender there."

[8] The record is not clear with respect to when defendant first advanced "value" to the debtor. *See* ORS 79.2030(1)(b).

tractors has priority. It follows that it was error to dismiss plaintiffs' complaint and to award attorney fees to defendant.[9]

Reversed and remanded.

---

[9] We do not consider whether defendant would have been entitled to attorney fees had it prevailed.