**In re DELTA RESOURCES, INC., Debtor.**

**AMSOUTH BANK, N.A., Plaintiff,**

**v.**

**ORIX CREDIT ALLIANCE, INC., Defendant.**

Bankruptcy No. 92–72874.
Adv. No. 93–70406.

United States Bankruptcy Court, N.D. Alabama.

Dec. 21, 1993.

Jerry W. Schoel, Birmingham, AL, for debtor Delta Resources, Inc.

Michael L. Hall and William S. Hereford, Birmingham, AL, for ORIX Credit Alliance.

David B. Anderson, Birmingham, AL, for AmSouth Bank, N.A.

Helen H. Ellis, Acting Bankruptcy Administrator and Estate Analyst, Bankruptcy Administrator's Office, Birmingham, AL.

David L. Carroll, Tuscaloosa, AL, for Navistar Financial Corp.

Donald M. Wright, Birmingham, AL, for Concord Commercial Credit Corp.

## *MEMORANDUM OF DECISION*

GEORGE S. WRIGHT, Chief Judge.

This matter came before the court on cross-motions for summary judgment of the plaintiff, AmSouth Bank, N.A. (AP Doc. 26) and of the defendant, ORIX Credit Alliance, Inc. (AP Doc. 34). After reviewing the record of this adversary proceeding (lawsuit), the Delta Resources, Inc., bankruptcy case as a whole, and conducting its own research, the court finds that the "transformation rule" controls on security interests in the Eleventh Circuit and thus in Alabama. Therefore, AmSouth's prior perfected lien in accounts receivable and equipment takes priority over the ORIX security interest in equipment and accounts. The summary judgment motion of the plaintiff is due to be **GRANTED**; the summary judgment motion of the defendant due to be **DENIED**.

### STATEMENT OF FACTS
### IN THE RECORD

Delta Resources Inc. of Boligee, Alabama, is a business primarily engaged in excavating and disposing of waste, hazardous and/or otherwise, from various sites around Alabama and the nation. It filed its petition for protection from its creditors under Chapter 11 reorganization on November 30, 1992 (BK Doc. 1).

This adversary proceeding is part of a multi-faceted dispute involving the debtor and two creditors competing legally for a first-priority interest in the debtor's equipment and accounts. Two interlocutory orders involving the equipment most directly in

issue in this suit have already been appealed to the District Court where this court was reversed. Both are now on appeal on the merits to the Eleventh Circuit Court of Appeals.

"On the merits" is the correct phraseology because ORIX has already obtained some $570,000.00 in cash from sale of the equipment and collected another approximate $80,000.00 in escrowed adequate protection payments which the debtor paid into the court during the pendency of this adversary proceeding litigation. (Delta Resources intervened to interplead the payments after both ORIX and AmSouth demanded the money.)

This suit is to settle which creditor has the right to that money and to any future adequate protection payments on proceeds or payments on equipment and accounts—the amount to be decided by the Eleventh Circuit Court of Appeals.

The court will attempt to trace the history of this dispute through its various postures as simply as possible.

ORIX Credit Alliance, Inc. filed a motion for relief from bankruptcy's automatic stay December 29, 1992. (BK Doc. 48) It sought to enforce what it claimed to be a purchase money security interest (PMSI in credit parlance) against certain equipment purchased at Warrior Tractor and Equipment, and financed by ORIX. That included the following equipment:

John Deere 770BH Motor Grader SN 528265

John Deere 544E Wheel Loader SN 534021

John Deere 544E Wheel Loader SN 534267

John Deere 410D Backhoe/Loader

John Deere Backhoe/Loader

John Deere 892D LC Excavator SN 006297

John Deere 892D LC Excavator SN 006271

John Deere 892D LC Excavator SN 006273

Allied Hoe Pack Model 9801 Compactor SN 8174

Allied Hammer Model 780 SN 1078

LaBounty Shear Model 112 SN 112606

LaBounty Shear Model 112 SN 112534

John Deere 644E Wheel Loader SN 531307

ORIX, itself, stated in the text of the motion that the four notes for purchase of the equipment "also provides that the Debtor grants to the holder of each Note" (ORIX):

a security interest in the property and in any and all inventory, goods, equipment, machinery, general intangibles, contract rights, furniture, fixtures and assets of any and every kind, wherever located, now or hereafter[.]

Exhibit B to ORIX's motion was a UCC–1 financing statement filed with the Alabama Secretary of State October 10, 1991 which perfected ORIX's security interest in the following:

All machinery, inventory, equipment, goods and accounts receivable as described in attached entire agreement and/or in any schedule prepared in connection therewith. This UCC form together with the attached security agreement and/or schedule are being submitted for filing herewith as a financing statement.

ORIX asked the court for relief from stay because it said its rights in its collateral were not adequately protected and that the excavation equipment was not necessary to the reorganization of the debtor's excavation business. (The creditor January 4, 1993 amended its motion to delete the two 544E wheel loaders.)

Further, on January 25, 1993, ORIX objected (BK Doc. 99) to the debtor's motion to sell various property, including many items which ORIX had not helped finance. (BK Doc. 69, filed January 8, 1993) On February 8, 1993, the court entered a document approving the sale—but preserving ORIX's claimed interest in this collateral.

Further, February 11, 1993, ORIX filed an adversary proceeding seeking to gain control of a federal income tax return Delta Resources had coming as "a general intangible"—in which ORIX claimed a security interest via its perfection on the alleged purchase money security interest. (AP 92–

72874, Doc. 1) In an October 25, 1993 consent order, the debtor agreed to pay the estimated $82,446.46 tax return over to ORIX when Delta received the refund. The order was signed by counsel for ORIX and Delta Resources and executed by the court.

During the course of the dispute over this equipment listed in the motion for relief from stay, two lengthy hearings were held. AmSouth asserted its contention that it, and not ORIX was the first lien holder, based on a prior perfected security interest on the equipment in a question.

AmSouth's Claim No. 85 for a total $1,904,-047.43 and the attached documents show a series of security agreements and UCC–1 financing statements (the earliest filed with the Secretary of State in 1987). The last was signed by the debtor January 31, 1991. This UCC–1 granted AmSouth a security interest in:

> All accounts receivable, machinery and equipment of Debtor, *whether now owned or hereafter acquired, including any and all additions and accessions thereto* and substitutions therefor, including, without limitation, Borrowers' present fleet of trucks and vehicles and any hereinafter acquired trucks and vehicles. (emphasis added)

AmSouth filed this adversary proceeding seeking to have the matter of priority finally decided by the court on March 29, 1993.

ORIX' Proof of Claim No. 109 for $1,039,-436.83 was filed April 12, 1993. It claimed a security interest in Delta Resources' equipment, inventory, accounts and general intangibles (the category for which it garnered rights to the tax return). As stated above, the UCC–1 financing statement perfecting the interest was filed October 10, 1991—11 months after AmSouth perfected its security interest in all equipment and accounts.

The court in a bench order March 17, 1993 denied ORIX relief from stay on a finding that the equipment was needed in the debtor's reorganization and granted ORIX a $9,972.41–a–month adequate protection payment to protect its interest until a Chapter 11 plan was confirmed or a decision in this adversary proceeding changed the priority of the liens.

For if AmSouth holds the first lien, this obviously would affect disposition of all funds paid on all equipment. The bench order was memorialized in a written order dated April 14, 1993. (BK Doc. 242)

ORIX had defined itself as slightly oversecured, but this court reserved a formal finding on this issue (which would entitle the creditor to post-confirmation interest) until confirmation of the plan. (Since the AP was still pending, it was impossible to determine exactly what collateral ORIX held, so a formal valuation of its secured interest was impossible.)

BK Doc. 243(A) is a "Statement of AmSouth Bank" (filed April 13, 1993) which says the following:

> AmSouth sought to reach an agreement with ORIX concerning the escrowing of the adequate protection payments and the preservation of the status quo pending the outcome of Adversary Proceeding No. 93–70406 which AmSouth has commenced in order to resolve the priority dispute. ORIX refused to agree to the preservation of the status quo by any form of escrowing of the required payments.

Nevertheless, ORIX on April 5, 1993 filed a motion to compel payment of the adequate protection due April 1, 1993, even though the adversary proceeding was then pending and the funds being interpleaded. (Doc. 225) The court denied the motion to compel April 19, 1993. (Doc. 247)

On April 26, 1993, ORIX filed formal notice of appeal to the United States District Court of the April 14, 1993 order denying it relief from stay but granting it the adequate protection payments. On April 29, 1993, ORIX filed notice of appeal of the court's denial of its motion to compel payment of the adequate protection payment it was appealing, and which was in dispute in this adversary proceeding which had been pending since March.

The District Court consolidated the two interlocutory orders for appeal June 23, 1993. (BK Doc. 345) On October 19, 1993, the District Court reversed and remanded both

orders, construing the *United Savings Association v. Timbers of Inwood Forest Associates Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) to mean that oversecured creditors in a Chapter 11 should be paid interest in addition to adequate protection payments in the period between filing of the petition and confirmation of a Chapter 11 plan.

The District Court ordered that the adequate protection payments going to ORIX should total "$18,264.31 (the Bankruptcy Court determined monthly depreciation of $9,972.41, plus $8,892.90)" in District Court-ordered in post-petition, preconfirmation interest and that the payments should be retroactive to March 17, 1993, the date of the bench order.

Delta Resources appealed the decision to the Eleventh Circuit, but since the District Court has not granted a stay pending appeal, this court planned to act on the mandate of the District Court.

Meanwhile, on November 18, 1993, Delta Resources moved to sell the purchase money equipment which is in issue in the dispute between the debtor, ORIX and AmSouth, to Rice Trucking Co. for $570,000. (Doc. 456)

By the hearing date, November 23, 1993, the parties had come to an agreement whereby the $570,000.00 proceeds of the sale would be turned over to ORIX and ORIX would receive the approximate $80,000.00 in adequate protection payments which Delta Resources had interpleaded since March under this adversary proceeding.

November 23, 1993, it was the impression of the court that the parties, including counsel for ORIX, had assured the court that the consent order they were to prepare would settle all differences between them, including those in the orders on appeal.

Nevertheless on November 24, 1993, the court received a copy of ORIX' writ of mandamus filed with the United States District Court which sought to order this bankruptcy court to implement the District Court order. (Doc. 469)

The consent order the parties had described to the court duly arrived November 29, 1993, duly signed by counsel for both Delta Resources and ORIX which had filed the writ of mandamus. The court that same day executed the order as discussed at the November 23 hearing.

The court received notice that ORIX had withdrawn its request for a writ of mandamus and entered such on the docket December 14, 1993.

The facts listed above are the background against which these cross-summary judgment motion must be decided. As required by Fed.R.Bankr.P. 7056 applying Fed.R.Civ.P. 56(c) there is no genuine issue as to any material fact to prevent a decision by the court on the purely legal question posed in the motions for summary judgment. All the facts listed above are from the record and are undisputed.

The issue before the Court is the validity of the "transformation rule."

## CONCLUSIONS OF LAW

The legal point at issue in this case is whether the so-called "transformation rule" applies to ORIX Credit Alliance's security interest in the equipment specified above.

The transformation rule is an interpretation of UCC's Article 9 which says a secured party spoils his purchase money security interest priority if he expands the collateral to include property he did not loan the debtor the funds to buy.

Under the facts in the record, ORIX perfected its security interest on October 10, 1991 in specific equipment it loaned the debtor money to purchase from Warrior Tractor and Equipment—and in accounts, inventory and general intangibles.

AmSouth filed its last UCC–1 covering Delta's accounts and all of its equipment "now owned or hereafter purchased" on January 31, 1991.

Generally following the "first-in-time, first-in-line" rule of UCC 9–312(5) [1], that would

---

**1.** *Ala.Code* § 7–9–312(5) provides as follows:

(5) In all cases not governed by other rules stated in this section *(including cases of pur-*

mean AmSouth would have the first lien position on all the debtor's accounts and equipment. However, UCC provides an exception to that rule for purchase money security interests under *Ala.Code* § 9–7–312(4).[2]

The transformation rule comes into play because of the stringent definition of "Purchase money security interest" in UCC generally, and Alabama's UCC Section 7–9–107.[3]

■ That section provides that to be judged a UCC "purchase money security interest", the interest must be taken back by the seller or assignee to secure his advance of credit so the debtor can buy the collateral. Or if the secured party is not the seller, a purchase money security interest can exist where the secured party loans money for a purchase, taking a security interest in the item purchased, and the debtor *actually uses* the money loaned to buy the item of collateral.

The transformation rule holds that a secured party cannot have its cake and eat it too. If a party creates a valid purchase money security interest in property it has loaned money for the debtor to buy, it can "spoil" that PMSI by extending the security interest to other property of the debtor for which it did not provide purchase money. (Creditors often do extend the interest to other items of property in an attempt to shore up their security.)

Thus, in this case, if the transformation rule applies, AmSouth Bank has a first priority lien on the debtor's equipment—including that financed by ORIX, because ORIX spoiled its PMSI priority by expanding its

security interest to other property of the debtor.

## I.

### THE TRANSFORMATION RULE HAS BEEN ADOPTED BY THE ELEVENTH CIRCUIT COURT OF APPEALS

■ The Eleventh Circuit Court of Appeals adopted the "transformation rule" in the early case of *Roberts v. Pierce (In re Manuel)*, 507 F.2d 990 (5th Cir.1975) which held:

A plain reading of the statutory requirements (Georgia's UCC 9–107 which is identical to Alabama's) would indicate that they require the purchase money security interest to be in the item purchased, and that, as the judges below noted, *the purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created,* if the vendor is to be protected despite the absence of filing. (emphasis added)

*In re Manuel,* 507 F.2d at 993.

The case, which involved the exception to filing for purchase money security interests, said essentially that in a consumer bankruptcy context, the PMSI must be limited to the item purchased at the time of the agreement and cannot exceed the price of that item.

Then in 1985, the Eleventh Circuit reaffirmed application of the transformation rule in *SouthTrust Bank v. Borg–Warner Acceptance Corp.,* 760 F.2d 1240 (1985), holding

---

chase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interest in the same collateral shall be determined according to the following rules: (emphasis added)

    (a) Conflicting security interests rank according to *priority in time of filing or perfection.* Priority dates from the time a filing is first made covering the collateral, or the time the security interest is first perfected, whichever is earlier, provided there is no period thereafter when there was neither filing nor perfection. (emphasis added)

    (b) So long as conflicting security interests are unperfected, the first to attach has priority.

**2.** *Ala.Code* § 7–9–312(4) provides:

    (4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter.

**3.** *Ala.Code* § 7–9–107 provides:

    A security interest is a "purchase money security interest" to the extent that it is:

    (a) Taken or retained by the seller of the collateral *to secure all or part of its price;* or

    (b) Taken by a person *who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.* (emphasis added)

that the "inclusion of an after-acquired property clause and a future advances clause in BWAC (Borg–Warner's) security agreement converted its purchase money security interest (PMSI) into an ordinary security interest." This ruling came in the context of commercial credit, not consumer transactions.

The Eleventh Circuit further held:

Second, BWAC contends that the cases supporting the transformation rule involve situations in which the clauses were actually exercised, e.g. *Manuel* (agreement covering pre-existing debt); [*In re*] *Simpson* [4 U.C.C.Rep. 243, 1966 WL 8812 (Bankr. W.D.Mich.1966) ] (future advances actually made). BWAC argues that mere inclusion of the clauses does not void a PMSI. *In re Griffin,* 9 B.R. 880 (Bankr.N.D.Ga.1981) (when creditor is seller, mere existence of unexercised future advances clause does not destroy PMSI); [*In re*] *Mid Atlantic Flange* [26 U.C.C.Rep. 203, 1979 WL 30070 (E.D.Pa.1979) ] (same). We need not reach the issue of whether mere inclusion of unexercised future advances and after acquired property clauses voids a PMSI because we find that BWAC exercised the clauses here. After entering the security agreements with the debtors, BWAC regularly purchased inventory for the debtors and now claims that the debtors' BWAC-financed inventory secures these purchases. This is an exercise of the future advances clause. Similarly, BWAC claims as collateral not only the inventory purchased at the time the security agreements were entered, but all BWAC-financed inventory. This is an exercise of the after-acquired property clause. *We hold, therefore, that BWAC's exercise of the future advances and after-acquired property clauses in its security agreements with the debtors destroyed its PMSI.* (emphasis added)

*SouthTrust Bank,* 760 F.2d at 1243.

Again, on March 23, 1992 the Eleventh Circuit reaffirmed its adoption of the transformation rule in the case of *In re Freeman,* 956 F.2d 252 (11th Cir.1992) which held that a creditor's security interest in a debtor's tools was transformed from a PMSI to a nonpurchase money security interest and, thus, could be avoided under Section 522(f)(2)(A).

Now, some 20 months later, ORIX Credit Alliance, Inc. contends that the transformation rule is not the law in the state of Alabama. ORIX' argument about what the law should be may well have some merit. If this bankruptcy court were writing on a clean slate, on a question of first impression, it might well reject the transformation rule.

However, this court views the Eleventh Circuit's continued adherence to the rule (readopted within the last 20 months) as binding authority. This court must adhere to the Eleventh Circuit's position and hold that ORIX' PMSI has been transformed into a non-purchase money security interest and thus is subordinate to the prior perfected security interest of AmSouth Bank, N.A.

As pointed out above, the definition of purchase money security interest in *Ala.Code* § 7–9–107 (1975) is very narrow:

**Definitions: "Purchase money security interest."**

A security interest is a "purchase money security interest" to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a *person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral of such value is in fact so used.* (emphasis added)

If a debtor and creditor add additional non-purchase collateral to the collateral in a purchase money security interest, then according to the transformation rule, the PMSI is destroyed. The creditor will still have a security interest, but may be primed by a previously perfected security interest. These issues create disputes primarily in two situations:

1. "Debt Add–On Clauses"—where additional debt is added to the original PMSI debt.

2. "Collateral Add–On Clauses"—where the debtor grants to the secured party a security interest in collateral other than the purchase money collateral.

*See* Gerald T. McLauglin, *"Add On" Clauses in Equipment Purchase Money Financing: Too Much of a Good Thing,* 49 Fordham L. Review 661–707 (1981); Nathaniel Hansford,

*The Purchase Money Security Interest in Inventory Versus the After–Acquired Property Interest—A No–Win Situation,* 20 U.Rich.L.Rev. 235 (1986) (Dean Nathaniel Hansford, University of Alabama School of Law, discusses the *SouthTrust Bank v. Borg–Warner Acceptance Corp.* case and explains its holding.)

In the respected treatise by Barkley Clark, *The Law of Secured Transactions,* 1988 Cum.Supp. No. 1, Paragraph 3.9[2] at page S3–58–60 discusses the *SouthTrust Bank* case as follows:

Does a security interest lose its purchase money character by cross-collateralization? In other words, what happens when the secured party invokes after-acquired property clauses and future advance provisions, so that each item of collateral becomes security for *more* than its own price? This was the issue presented in *SouthTrust Bank of Ala., N.A. v. Borg–Warner Acceptance Corp.,* which involved a priority battle between two competing financers of inventory. Secured Creditor A had a floating lien covering all after-acquired inventory; secured Creditor B, which filed later, claimed purchase money status under § 9–107(b) because its loans enabled the debtor to acquire specific inventory from suppliers. Creditor B had jumped through all the appropriate hoops of § 9–312(3)—filing before delivery of the first inventory and sending written notification to Creditor A. Nonetheless, the Eleventh Circuit held that Creditor B's security interest lost its purchase money status because of the broad documentation. Under the court's reasoning, the after-acquired property clause and future advance clause in Creditor B's security agreement meant that each item of inventory was standing as collateral for each advance; no longer was it a matter of separable "purchase money security interests" for each item of collateral. Therefore, Creditor A had priority under the first-to-file rule of § 9–312(5).

The "transformation rule" by which a purchase money security interest is transformed into a non-purchase money interest through the operation of cross-collateral provisions, has been invoked often in the context of consumer bankruptcy. Section 522(f) of the Bankruptcy Code allows a consumer debtor to wipe out non-purchase money security interests in various types of tangible personal property exempt from the claims of unsecured creditors. The courts have not been shy about allowing use of § 522(f) against a creditor who starts off with a purchase money security interest, but ends up with a mixed bag due to the operation of after-acquired property and future advance clauses in the security agreement or other documentation. The importance of the *SouthTrust Bank* case is the court's willingness to extend the transformation rule into the setting of a priority battle between two commercial lenders under Article 9. Secured Creditor A argued that the consumer bankruptcy cases are distinguishable in that the policy of consumer protection does not apply to a battle between inventory financers. The court rejected this argument, finding that the definition of "purchase money security interest" in § 9–107 is the same whether the issue is lien avoidance under the Bankruptcy Code or priority conflicts under § 9–312 of the UCC. Secured Creditor A also argued that applying the transformation rule to inventory financers would require them to police inventory constantly to see that inventory corresponds on an item-by-item basis with debt. The court also rejected this contention, concluding that purchase money priority can be retained by subordination agreements with the first-to-file creditor, or by documentation specifying that payments be allocated first to items bought first. Finally, the court never reached the issue of whether mere inclusion of unexercised future advance and after-acquired property clauses voids a purchase money security interest, because it found that the clauses were in fact exercised in the case before it. After entering the security agreements, Secured Creditor B regularly purchased inventory for the debtor and now claimed that these purchases were future advances covered by the original security agreement; similarly, Creditor B claimed as collateral not only the inventory purchased at the time of the

security agreement, but also all later-acquired inventory. In short, the purchase money interest had in fact "been transformed" into a general floating lien governed by the first-to-file rule.

The *SouthTrust Bank* case seems correct. There is nothing in the language of §§ 9–107 or 9–312 that suggests the integrity of a purchase money security interest can be lost only for the limited purpose of lien avoidance in bankruptcy. If the drafters had intended that limited result, they could have so provided. Moreover, the use of subordination agreements and first-in-first-out documentation provides adequate alternative means by which the purchase money lender can protect itself.

If two secured creditors are competing, the first to file a financing statement will prevail unless the second to file can claim purchase money priority. In *Wade Credit Corp. v. Borg–Warner Acceptance Corp.* [83 Or.App. 479, 732 P.2d 76 (1987)], the second to file lost out because it was unable to persuade the court that its advance enabled the debtor to "acquire" the tractors that stood as collateral. Therefore, even though the advance was forwarded to the seller and enabled the debtor to "maintain" rights in and "have the use of" the tractors, it fell short of purchase money status. The result would have been otherwise if the purported purchase money lender had been able to show that the seller of the tractors had conditioned the sale and delivery on the debtor's acquisition of secondary financing.

ORIX contends that the phrase "to the extent that" in Section 7–9–107 makes *South-Trust Bank* incorrect. Under Section 9–107 of the Uniform Commercial Code, a security interest is a PMSI "to the extent that" it is taken to actually enable debtor to purchase the collateral.

ORIX contends that the recent December 1, 1992 report of the Article 9 Committee of the Permanent Editorial Board for the Uniform Commercial Code (the "1992 Report") is apparently an attempt to change the holding in the Eleventh Circuit's *Borg–Warner* and *Freeman* cases. However, that report is not yet law in Alabama.

*See also, December 1, 1992 Report of the Article 9 Committee of the Permanent Editorial Board of the Uniform Commercial Code;* Wessman, *Purchase Money Inventory Financing: The Case for Limited Cross Collateralization,* 51 Ohio L.J. 1283, 1324 (1990); Beard, *The Purchase Money Security Interest In Inventory: If It Does Not Float It Must Be Dead,* 57 Tenn.L.Rev. 437, 444 (1990); Marshall, *Commercial Law (Annual Survey of Georgia Law),* 37 Mercer L.Rev. 139, 155 (1985); Aronov, *The Transformation Rule Applied to Purchase Money Security Interest In Commercial Lending Transactions,* 16 Mem.St.U.L.Rev. 15, 45 (1985); Smith, *Secured Transactions,* 41 Bus.Law 1463, 1484–86; *In re Ionosphere Clubs, Inc.,* 123 B.R. 166, 171 (S.D.N.Y.1991); *In re Billings,* 63 B.R. 717, 720 (D.Colo.1986), *aff'd,* 838 F.2d 405 (10th Cir.1988); *Pristas v. Landaus of Plymouth, Inc.,* 742 F.2d 797, 801 (3rd Cir.1984); *In re Express Air, Inc.,* 136 B.R. 328, 332 (Bankr.D.Mass.1992); *Geist v. Converse County Bank,* 79 B.R. 939 (D.Wyo. 1987); *In re Sherman,* 126 B.R. 684 (Bankr. E.D.N.C.1987); *In re Nolen,* 53 B.R. 235 (Bankr.M.D.Tenn.1985); *Borg–Warner Acceptance Corp. v. Tascosa Nat'l Bank,* 784 S.W.2d 129 (Tex.App.1990); and *Barnett Bank of Southwest Florida, N.A. v. Alfonso,* 15 U.C.C. Rep.2d 1091, 1991 WL 296738 (Fla.Cir.Ct.1991).

However, this bankruptcy court is located in Alabama, in the Eleventh Circuit. This court considers that the 20–month–old *Freeman* case is binding on the bankruptcy court and requires application of the transformation rule to this case.

For whatever the arguments against the transformation rule, it is clearly the law in the Eleventh Circuit.

## II.

### WHEN THE LAW IS APPLIED TO THIS CASE, IT IS APPARENT THAT ORIX HAS LOST ITS PMSI PRIORITY UNDER THE TRANSFORMATION RULE

*SouthTrust Bank v. Borg–Warner Acceptance Corp.* held that the creditors who actually exercise the future advances and after-

acquired property clauses in their security agreements destroy their favored status as holders of a purchase money security interest.

█ ORIX has acted on the claims and clauses which now destroy its PMSI status at least four times in this bankruptcy case. The instances include the following:

**A. ORIX' own proof of claim sought payment for obligations secured by property other than the equipment it initially loaned money for.**

ORIX filed Proof of Claim No. 105 (filed in the Bankruptcy Court Western Division on April 6, 1993); and Proof of Claim No. 109 (originally filed in the Southern *District* of Alabama on March 31, 1993 but later filed on April 12, 1993 in the Western Division of the Northern District of Alabama) in the amount of $1,039,436.83.

The ORIX proof of claim claimed purchase money security interests under four separate notes. Included in the purported purchase money collateral in addition to the machines it had financed were the following items of property of the debtor:

(A) Equipment

(B) Inventory

(C) Accounts

(D) General Intangibles

In addition, the proof of claim also claimed a security interest in "assets of any and every kind." Such a description is clearly too broad and general to meet the requirements of Alabama UCC Section 7–9–110 which provides:

**Sufficiency of Description.**

For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it *reasonably identifies what is described.* (emphasis added)

*See* Barkley Clark, Paragraph 2.9[5][c]; *Mongul Enterprises v. Commercial Credit*

*Business Loans,* 92 N.M. 215, 585 P.2d 1096 (1978).

**B. ORIX, itself, cited the additional collateral in its motion for relief from stay.**

As noted in the statement of facts gleaned from this record ORIX' motion (Doc. 48) was filed on December 29, 1992 described the "blanket collateral" in Paragraph 2 as follows:

a security interest in the property and in any and all inventory, goods, equipment, machinery, general intangibles, contract rights, furniture, fixtures and assets of any and every kind, wherever located, now or hereafter belonging to [Debtor] or in which [Debtor] has any interest[.]

**C. ORIX, itself, filed the adversary proceeding that garnered it a right to the debtor's income tax refund—acting on its security interest in "general intangibles" of the debtor.**

As noted above, ORIX filed an adversary proceeding to collect a federal tax refund in the net amount of $82,446.46 (AP 93–70194). ORIX claimed a security interest in the income tax refund as a "general intangible"— property of the debtor outside the original equipment purchase. That suit resulted in an order that grants ORIX the right to the debtor's $82,446.46 tax refund when it is processed by IRS. (AP Doc. 21 dated October 25, 1993).

**D. ORIX, itself, objected to the debtor's sale of collateral other than that which it loaned the debtor money to buy.**

ORIX objected to the debtor-in-possession's sale of property other than the heavy equipment it had loaned Delta Resources the money to purchase. On January 8, 1993, (BK Doc. 69), Delta filed a motion for authority to sell property of the estate by private sale free and clear of liens and other interests for minimum stated prices. On January 25, 1993 ORIX objected to Debtor's motion which included equipment other than that financed by ORIX. (Docs. 99 and 100)

On February 8, 1993 an order was entered approving the sale of the collateral, but preserving ORIX's claimed interest in the collateral.

Because ORIX has "actually exercised its rights" against collateral other than the pur-

chase money collateral, *SouthTrust Bank v. Borg–Warner* teaches that it "loses its priority status as a purchase money secured lender." *See* 760 F.2d at 1243.

## CONCLUSION

The transformation rule is the law in the Eleventh Circuit. Therefore, ORIX' own actions have cost it its purchase money security interest in Delta Resources' property and the priority that the PMSI status gave its interest. ORIX is simply a secured creditor.

AmSouth Bank, N.A., has a prior perfected security interest in Delta's machinery and equipment as well as accounts receivable. However, the bank has no security interest in Delta's general intangibles.

Therefore, AmSouth's security interest in all the debtor's accounts receivable and its equipment is superior to that of ORIX Credit Alliance—including the equipment ORIX originally financed for the debtor, and which was the subject of previous contested matters in this court.

This memorandum of decision constitutes factual findings and conclusions of law pursuant to Fed.R.Bankr.P. 7052. A separate order will be entered consistent with this opinion on the issue of the transformation rule.

Additionally, a separate pretrial will be set on the counterclaim of ORIX (Doc. 18) on the counts of (1) marshalling and (2) subordination; and on its third-party complaint against Navistar Financial Corporation and Concord Commercial Credit Corporation.