In re **BROOKWOOD SAND & GRAVEL, INC.,** Debtor.

**ORIX CREDIT ALLIANCE, INC.,** Plaintiff,

v.

**BANK OF TUSCALOOSA,** Defendant.

Bankruptcy No. 93–71687.

Adv. No. 94–70548.

United States Bankruptcy Court, N.D. Alabama, Western Division.

Nov. 15, 1994.

W. Cameron Parsons, Tuscaloosa, AL, for debtor Brookwood Sand & Gravel, Inc.

Michael L. Hall, Birmingham, AL, for plaintiff ORIX Credit Alliance, Inc.

Kimberly B. Glass, Tuscaloosa, AL, for defendant Bank of Tuscaloosa.

### MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This matter came before the court on cross-motions for summary judgment filed by ORIX Credit Alliance, Inc. (plaintiff) and Bank of Tuscaloosa (defendant). Each party requests the court to find its interest in the property at issue to be superior to the other party's interest and to resolve the priority dispute in its favor. The court has reviewed the briefs, supporting materials, and evidence in the context of applicable law and finds the security interest of **ORIX Credit Alliance** to be superior. Therefore, the relief sought in **ORIX Credit Alliance's** motion for summary judgment is due to be **GRANTED.**

### FINDINGS OF FACT

The parties stipulated to the following facts as stated in ORIX Credit Alliance's Brief. (AP Doc. 18). Any fact not included in the brief will be referenced to its specific source.

The equipment that is the subject of this priority dispute is one (1) Caterpillar Loader 996D, s/n 99Y03759 and one (1) TD 25 Dozer, s/n 1414 (hereafter the "equipment"). The equipment is in the possession of Brookwood Sand & Gravel, Inc., the Chapter 11 debtor. The debtor uses the equipment in its business. The debtor contends that the equipment is necessary to an effective reorganization.

On February 12, 1992, Brookwood Sand & Gravel first acquired possession of the equipment. The debtor's initial possession of the equipment was based upon a *lease* arrangement that the debtor had with Dunn Construction Company, Inc. Dunn did not file an Uniform Commercial Code financing statement at that time.

On July 23, 1992, ORIX filed a financing statement against the debtor with the Alabama Secretary of State (First UCC filing). The ORIX financing statement included a copy of the parties' security agreement which provided in pertinent part:

> To secure the prompt payment, with interest thereon, performance and fulfillment of any and all Mortgage Obligations (as hereinafter defined) of Mortgagor (debtor) to Mortgagee (ORIX), which is hereby confessed and acknowledged, Mortgagor hereby grants, assigns, transfers, bargains, sells, conveys, confirms, pledges, and mortgages to Mortgagee, all and singular, the goods, chattels and property described in the annexed Schedule A *and all other* goods, chattels, machinery, *equipment,* inventory, accounts, chattel paper, notes receivables, accounts receivable, furniture, fixtures, general intangibles, and property of every kind and nature, wherever located, *now or hereafter belonging to Mortgagor* and all proceeds and any distribution thereof and any insurance thereon (all of the foregoing hereinafter referred to as the "Mortgaged Property"), to have and to hold the same unto Mortgagee forever. (Exhibit C to AP Doc. 8) (emphasis added).[1]

No other financing statements had been filed against the debtor that covered the loader

---

1. Hence, ORIX obtained a perfected security interest in all after acquired equipment of the debt-  or, including the equipment at issue.

and dozer prior to the ORIX financing statement.

August 7, 1992, the debtor purchased the equipment on credit from Dunn. The debt due from the debtor to Dunn under the sales agreement will be referred to as the acquisition debt. The sales agreement, which included a security agreement, provided that the equipment was security for both the acquisition debt and all other debt and future indebtedness owed or to be owed to Dunn. The security agreement provided that:

> This Security Agreement secures the payment when due of all Obligations of the Debtor to the Secured Party now or hereafter existing, whether under the Agreement, the Note or otherwise, and whether for principal, interest, fees, expenses or otherwise, and all obligations of the Debtor now or hereafter existing under this Security Agreement. (All such obligations of the Debtor referred to as "Obligations".) (Underlining for emphasis)

On August 13, 1992, clearly within twenty days after the debtor received possession of the collateral, Dunn timely filed a financing statement covering the equipment with the Alabama Secretary of State (Second UCC filing). (Exhibit D to AP Doc. 8).

As of August 7, 1992, Brookwood Sand & Gravel also owed Dunn on other obligations. Both the acquisition debt and the other Dunn indebtedness were, for a time, owed to Dunn simultaneously. The equipment was security for both debts. And collateral on the other debt was security for the acquisition debt. Both debts, for a period of time, were each for tens of thousands of dollars.

A financing statement which covered the equipment was filed against the debtor with the Alabama Secretary of State in October of 1992 (the Third UCC filing). This financing statement was subsequently assigned to the Small Business Administration (hereafter the "SBA").

On March 26, 1993, the Bank of Tuscaloosa lent the debtor $117,000.00. The bank took a security interest in the loader and dozer as collateral for this loan. (Exhibit I to AP Doc. 8). The bank believed it was receiving a purchase money security interest in the equipment. (Affidavit of James B. Flemming, Attachment to AP Doc. 15). The bank did not perform an UCC–11 search before it made the loan to Brookwood. (Affidavit of James B. Flemming, Attachment to AP Doc. 15). The bank was ignorant of the ORIX security interest and financing statement at the time of its loan to the debtor. (Affidavit of James B. Flemming, Attachment to AP Doc. 15).

Some $83,657.94 of the proceeds of the bank's loan were used to extinguish the debtor's indebtedness to Maxx Parts & Equipment, Inc. The debtor's obligation to Maxx was totally unrelated to the acquisition of the equipment. The debtor used the remaining proceeds of the bank loan ($33,337.80) to pay off Dunn on the acquisition debt. However, the debtor continued to owe Dunn on other indebtedness.

On April 2, 1993, the Bank of Tuscaloosa filed with the Alabama Secretary of State a financing statement against Brookwood covering the equipment (the Fourth UCC filing). The bank's financing statement was the fourth financing statement filed against the loader and dozer and was filed more than eight months after ORIX's financing statement had been filed.

Dunn concedes that whatever security interest it now has in the equipment is inferior to the interest of ORIX. The SBA also makes no claims to priority over ORIX on this equipment.

Dunn never assigned to the bank the sales agreement, the acquisition indebtedness, or any security agreement or financing statement it had received in connection with the sale of the equipment.

The debtor continues to owe ORIX more than $170,000.

## CONCLUSIONS OF LAW

### I.

*THE BANKRUPTCY COURT MUST APPLY THE TRANSFORMATION RULE TO THE FACTS OF EACH CASE AND DETERMINE IF THE ALLEGED PURCHASE MONEY SECURITY INTEREST (PMSI) IS A TRUE PMSI OR AN ORDINARY SECURITY INTEREST.*

This adversary proceeding came before the court on the parties' cross-motions for sum-

mary judgment. Since the parties have stipulated to all the relevant facts, there is no genuine issue as to any material fact. Consequently, this court is authorized under Fed. R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c) to decide the purely legal question presented and enter judgment in favor of the party entitled to relief as a matter of law.

This case hinges on the purchase money status of the bank. The significance of a purchase money security interest (PMSI) is that the state commercial code often gives the holder of a PMSI priority over another secured creditor that has an earlier perfected security interest (SI) in the same collateral. In this case, the collateral at issue is equipment of the debtor. *Ala.Code* § 7–9–312(4) provides that a secured creditor with a PMSI in collateral other than inventory (e.g. equipment) has priority over a conflicting SI in the same collateral, if the PMSI is perfected at the time the debtor received possession of the collateral or within twenty days thereafter.[2]

In this case, the bank is asserting purchase money status and the first priority flowing from that status. The bank did file a financing statement perfecting its SI in the collateral within twenty days of the debtor receiving possession of the equipment. Hence, the bank met the formal requirement of *Ala. Code* § 7–9–312(4) to gain preemptive priority rights in the equipment. However, ORIX posits that the transformation rule spoils the bank's PMSI such that the second-in-time, first-in-right priority rule of *Ala.Code* § 7–9–312(4) is not applicable. Thus, this court must examine the viability of the bank's claim to purchase money status in light of the transformation rule.

■ The transformation rule is the law in this circuit. The Court of Appeals for the Eleventh Circuit initially adopted the rule in 1975 when it noted that a "purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created...." *In re Manuel,* 507 F.2d 990, 993 (11th Cir.1975). In 1985, the Eleventh Circuit extended the transformation rule to commercial transactions. *See Southtrust Bank v. Borg–Warner Corp.,* 760 F.2d 1240, 1242 (11th Cir.1985). In *Southtrust Bank,* the court stated that a "PMSI requires a one-to-one relationship between the debt and the collateral." Hence, a creditor's exercise of after-acquired property and future advance clauses was held to have destroyed its purchase money status because there was no longer a monogynous relationship between the credit extended pursuant to the alleged PMSI and the collateral securing the debt. *Id.* at 1243.

■ The court recently reaffirmed its commitment to the transformation rule in *In re Freeman,* 956 F.2d 252 (11th Cir.1992). In *Freeman,* the court declared that "[a] security interest in collateral is 'purchase money' to the extent that the item secures a debt for the money required to make the purchase, [but] [i]f an item of collateral secures some other type of debt, e.g., antecedent debt, it is not purchase money."[3] *Id.* at 255.

This court, pursuant to the Eleventh Circuit's mandate, has adopted the transformation rule. *In re Delta Resources,* 162 B.R. 562 (Bankr.N.D.Ala.1993). In *Delta,* this court defined the transformation rule as "an interpretation of UCC's Article 9 which says a *secured party spoils his purchase money security interest priority if he expands the collateral to include property he did not loan the debtor the funds to buy."* *Id.* at 566. In that case, the rule worked to destroy the PMSI of the creditor who took and exercised a security interest in more assets of the debtor than what the debtor purchased with the proceeds of the creditor's loan. *Id.* at 568.

■ Hence, in this case, the court must apply the transformation rule to the security

---

**2.** This is a second-in-time, first-in-right priority rule as the purchase money secured creditor is given the senior interest in the collateral though it was the second creditor to perfect a security interest in the collateral.

**3.** Note, however, that the application of the transformation rule only works to destroy the purchase money nature of the security interest. The creditor still has a security interest in the collateral, but it is now an ordinary security interest instead of a purchase money one.

interests obtained by Dunn and the bank and determine if they are spoiled.[4] A PMSI is spoiled if the creditor (1) secured the credit extended with collateral other than the assets the debtor purchased with the proceeds of the creditor's loan and/or (2) had the assets the debtor bought with the proceeds of the creditor's loan stand as collateral to secure other debt the debtor simultaneously owed the creditor. If the PMSIs of Dunn and the bank are spoiled, then ORIX will have first priority in the dispute and the senior interest in the equipment at issue.[5]

## II.

### *ORIX HAS THE SUPERIOR SECURITY INTEREST IN THE EQUIPMENT BECAUSE THE TRANSFORMATION RULE SPOILS THE ALLEGED PMSI OF DUNN AND THE BANK.*

### A. The transformation rule spoils Dunn's PMSI.

■ The application of the transformation rule to the Dunn PMSI is straight forward. The parties have stipulated to the fact that the dozer and loader were security for the acquisition debt and other debt Brookwood owed Dunn. (AP Doc. 18). Also, the collateral on the other debt secured the acquisition debt. This is a paradigm illustration of a creditor cross-collateralizing the debts owed to it by a debtor.

■ Though creditors often use cross-collateralization to obtain additional security, this credit practice has the detrimental effect of spoiling PMSI status. The security interest is no longer purchase money because the debt secured exceeds the price of what is purchased in the transaction that created the security interest. *In re Manuel*, 507 F.2d at 993. In this situation, the item purchased secures a debt other than the acquisition debt, which precludes the security interest from being purchase money. *In re Freeman*, 956 F.2d at 255. Hence, Dunn only had an ordinary security interest as its PMSI was destroyed.[6] Thus, as between Dunn and ORIX, ORIX has the superior interest in the equipment as it was the first to file a financing statement covering the loader and dozer. *Ala.Code* § 7–9–312(5).[7]

### B. The transformation rule spoils the bank's PMSI.

■ As with Dunn's PMSI, the transformation rule applies to spoil the bank's alleged PMSI. The bank admits that the debtor used the proceeds of the bank's loan to

---

4. There is no debate regarding the nature of ORIX's security interest as it is without question an ordinary security interest.

5. This result follows from the first-to-file, first-in-right rule which governs priority disputes between secured creditors who do not have any preemptive priority rights. *Ala.Code* § 7–9–312(5). *Ala.Code* § 7–9–312(5) provides:

(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

(b) So long as conflicting security interests are unperfected, the first to attach has priority.

6. It should be noted that this case, contrary to the Bank's assertion, does not involve the issue of whether the transformation rule applies to spoil a PMSI where there is a mere inclusion of an after acquired property or future advance clause. In this case, the parties agreed that Dunn had cross-collateralized its debts. Hence, there was an overt creditor action that destroyed its PMSI. To the extent the Eleventh Circuit has not ruled on the issue, this court expresses no opinion on whether the mere inclusion of an after acquired property or future advance clause will trigger the transformation rule.

7. Note that the application of the transformation rule to Dunn's PMSI renders moot the equitable subrogation issue briefed by the parties. It would be of no benefit for the Bank to subrogate to Dunn's position because Dunn is second in priority to ORIX. Hence, the court expresses no opinion as to whether the Bank's failure to perform an UCC–11 search of the filed financing statements amounts to culpable negligence for purposes of the equitable subrogation doctrine or an opinion as to any other issue pertaining to this doctrine.

pay off Dunn on the acquisition debt and to extinguish the debt owed to Maxx. (AP Doc. 18). The debtor's obligation to Maxx was totally unrelated to the purchase of the loader and dozer. (AP Doc. 18). In this situation, the PMSI exceeded the price of the collateral purchased with the proceeds of the loan (i.e. the price of the loader and the dozer.) Moreover, the loader and dozer were security for debt (antecedent debt) that was not created upon the purchase of the equipment. Without question the transformation rule spoils the bank's PMSI and makes it an ordinary security interest.

■ Since the priority dispute between the bank and ORIX only involves two ordinary security interests, the first-to-file, first-in-right priority rule governs the fight. *Ala. Code* § 7–9–312(5). ORIX filed a financing statement covering the loader and dozer before the bank did so. ORIX's security interest was perfected upon the filing of the financing statement. Therefore, ORIX wins the priority conflict and has the superior interest in the equipment.

### CONCLUSION

Considering all the facts, ORIX Credit Alliance's security interest in the equipment at issue is superior to the Bank of Tuscaloosa's security interest. As a result, ORIX Credit Alliance has priority over the Bank of Tuscaloosa in asserting an interest in the property at issue in this adversary proceeding.

A separate order will be entered which is consistent with these findings pursuant to Fed.R.Bank.P. 7052.

**DONE AND ORDERED.**

### *ORDER DETERMINING PRIORITY OF INTEREST*

This matter came before the court on cross-motions for summary judgment. Both the plaintiff, ORIX Credit Alliance, and the defendant, Bank of Tuscaloosa, requested that their interests in the equipment at issue be found superior to the opposing party's interest. The court has reviewed the motions and the supporting materials and finds that ORIX Credit Alliance has first priority

in the equipment at issue. As a result of this finding it is hereby

**ORDERED, DECREED, AND ADJUDGED:**

1. That the transformation rule is the applicable law in this circuit for determining whether an alleged purchase money security interest (PMSI) is a true PMSI or is an ordinary security interest.

2. That the transformation rule applies to spoil the PMSI status claimed by the Bank of Tuscaloosa.

3. That *Ala. Code* § 7–9–312(5) governs the priority dispute between two ordinary secured parties with interests in the same equipment.

4. That the first-to-file, first-in-right priority rule of *Ala. Code* § 7–9–312(5) gives first priority to the secured creditor that was the first to file a financing statement covering the collateral at issue.

5. That ORIX Credit Alliance was the first secured creditor to file a financing statement covering the equipment at issue.

6. That ORIX Credit Alliance has the superior interest in the equipment at issue as against the Bank of Tuscaloosa.

**DONE AND ORDERED.**