SOUTHTRUST BANK OF ALABAMA, NATIONAL ASSOCIATION, formerly named Birmingham Trust National Bank, Plaintiff-Appellee,

v.

BORG–WARNER ACCEPTANCE CORP., a corporation, Defendant-Appellant.

No. 84–7396.

United States Court of Appeals, Eleventh Circuit.

May 21, 1985.

Leo E. Costello, Birmingham, Ala., for defendant-appellant.

Thomas R. Elliott, Jr., Laurence D. Vinson, Jr., Birmingham, Ala., for plaintiff-appellee.

Before RONEY and HILL, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Borg-Warner Acceptance Corporation ("BWAC") appeals from a decision of the district court denying its motion for summary judgment and granting summary judgment to Southtrust Bank ("the Bank")

in a diversity suit. The Bank filed a declaratory judgment action to ascertain which of the parties has priority in the inventory of four debtors, Molay Brothers Supply Company, Inc., Gulf City Distributors, Inc., Standard Wholesale Supply Company and Crest Refrigeration, Inc.[1] These debtors, which are no longer in existence, defaulted on obligations they owed to one or the other party.

Both the Bank and BWAC have perfected security interests in the inventory of the debtors. In each case, the Bank filed its financing statement first. BWAC contends that as a purchase money lender it falls within the purchase money security interest exception to the first to file rule and therefore is entitled to possession of the inventory.[2] The Uniform Commercial Code (UCC) as adopted in both Alabama and Georgia, provides in pertinent part:

A security interest is a "purchase money security interest" to the extent that it is:

(a) Taken or retained by the seller of the collateral to secure all or part of its price; or

(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Ala.Code § 7-9-107 (1975); O.C.G.A. § 11-9-107 (1981).

BWAC engages in purchase money financing. Here, BWAC purchased invoices from vendors who supplied inventory items to the debtors in question. The security agreements between BWAC and each of the debtors contained the following provision:

In order to secure repayment to Secured Party of all such extensions of credit made by Secured Party in accordance with this Agreement, and to secure

1. The inventory of debtor Crest was in Georgia and all financing statements regarding Crest were filed there. Therefore, Georgia law applies as to Crest. The inventory of the other three debtors and all filings concerning them were in Alabama. Thus, Alabama law controls as to these debtors. Ala.Code § 7-9-103(1)(b) (1975).

2. A purchase money security interest in inventory has priority over a conflicting security interest in the same inventory. Ala.Code § 7-9-312(3) (1975); O.C.G.A. § 11-9-312(3) (1981).

payment of all other debts or liabilities and performance of all obligations of Debtor to Secured Party, whether now existing or hereafter arising, Debtor agrees that Secured Party shall have and hereby grants to Secured Party a security interest in all Inventory of Debtor, whether now owned or hereafter acquired, and all Proceeds and products thereof.

The term "Inventory" was defined as "all inventory, of whatever kind or nature, wherever located, now owned or hereafter acquired ... when such inventory has been financed by Borg-Warner Acceptance Corporation."

BWAC and the debtors employed a scheduled liquidation arrangement to reduce the debt owed BWAC. Under this arrangement a debtor was permitted to pay a percentage of the invoice each month, without regard to whether the item was actually sold. If an unpaid item was sold, then the remaining inventory served as collateral to secure the unpaid balance.

The key issue for decision by this Court is whether inclusion of an after-acquired property clause and a future advances clause in BWAC's security agreements converted its purchase money security interest (PMSI) into an ordinary security interest.

The district court held that inclusion of after-acquired property and future advances clauses ("the clauses") in the security agreement converted BWAC's PMSI into an ordinary security interest. The court relied on In re Manuel, 507 F.2d 990 (5th Cir.1975) (holding, in a consumer bankruptcy context, that PMSI must be limited to the item purchased at time of the agreement and cannot exceed the price of that item); In re Norrell, 426 F.Supp. 435 (M.D. Ga.1977) (same); and In re Simpson, 4 U.C.C.Rep.Serv. 243 (W.D.Mich.1966) (inclusion of future advances clause in security agreement for farm equipment destroys PMSI).

BWAC argues that the cases relied on by the court are distinguishable. First, BWAC notes that almost all the cases following the "transformation" rule (i.e., inclusion of the clauses transforms a PMSI into an ordinary security interest) are consumer bankruptcy cases. It argues that the rationale of those cases, which is to protect the consumer, does not apply in commercial cases such as the case at bar. See In re Mid-Atlantic Flange, 26 U.C.C. Rep.Serv. 203, 208 (E.D.Pa.1979). BWAC argues that the policy considerations in a commercial setting, promoting commercial certainty and encouraging credit extension, do not support the application of the transformation rule. According to BWAC, applying the transformation rule to inventory financiers would require them to police inventory constantly and to see that inventory corresponds on an item-by-item basis with debt.

The Bank argues that the transformation rule is not a product of special bankruptcy considerations, and that if the drafters had intended to limit the rule to consumer transactions, they would have said so, as they did in other sections of the Code. The Bank contends that a holding that inclusion of the clauses destroys a PMSI would not have a serious negative effect on inventory financiers. It points out that such financiers could retain priority by obtaining a subordination agreement from the first-to-file creditor.

We see no reason to limit the holding of In re Manuel to consumer bankruptcy cases. In that case, the Fifth Circuit stated:

A plain reading of the statutory requirements would indicate that they require the purchase money security interest to be in the item purchased, and that, as the judges below noted, the purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created....

Id. at 993. Nothing in the language of U.C.C. § 9–312(3) or § 9–107 distinguishes between consumer and commercial transactions or between bankruptcy and nonbankruptcy contexts. We see no policy reasons for creating a distinction where the drafters have not done so.

Second, BWAC contends that the cases supporting the transformation rule involve situations in which the clauses were actually exercised, *e.g., Manuel* (agreement covered pre-existing debt); *Simpson* (future advances actually made). BWAC argues that mere inclusion of the clauses does not void a PMSI. *In re Griffin,* 9 B.R. 880 (Bankr.N.D.Ga.1981) (when creditor is seller, mere existence of unexercised future advances clause does not destroy PMSI); *Mid Atlantic Flange* (same). We need not reach the issue of whether mere inclusion of unexercised future advances and after-acquired property clauses voids a PMSI because we find that BWAC exercised the clauses here. After entering the security agreements with the debtors, BWAC regularly purchased inventory for the debtors and now claims that the debtors' BWAC-financed inventory secures these purchases. This is an exercise of the future advances clause. Similarly, BWAC claims as collateral not only the inventory purchased at the time the security agreements were entered, but all BWAC-financed inventory. This is an exercise of the after-acquired property clause. We hold, therefore, that BWAC's exercise of the future advances and after-acquired property clauses in its security agreements with the debtors destroyed its PMSI.

We note, as did the district court, that BWAC retains a security interest in the goods. It merely loses its priority status as a purchase money secured lender. The concept of the floating lien under the U.C.C. remains intact. We hold, merely, that such a floating lien is inconsistent with a PMSI. A PMSI requires a one-to-one relationship between the debt and the collateral.

BWAC's final argument is that the court should adopt a "to the extent" rule, based on the literal language of UCC, § 9–107:

A security interest is a "purchase money security interest" *to the extent* that it is ... (b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used. (emphasis added.)

Some courts have held that the clauses, even if exercised, do not invalidate a PMSI if there is some method for determining the extent of the PMSI. For example, in *In re Staley,* 426 F.Supp. 437 (M.D.Ga.1977), the court held that the PMSI was valid because the security agreement specified that payments be allocated first to items bought first. Thus, it was easy for the court to ascertain which items had been fully paid for and hence no longer served as collateral. Here, however, nothing in the contract or in state law allocates payments to particular items of inventory. BWAC, in fact, claims all BWAC-financed inventory as its collateral without regard to payments made by the debtors. We agree with the court in *In re Coomer,* 8 B.R. 351, 355 (Bankr.E.D.Tenn.1980), that

Without some guidelines, legislative or contractual, the court should not be required to distill from a mass of transactions the extent to which a security interest is purchase money.

Unless a lender contractually provides some method for determining the extent to which each item of collateral secures its purchase money, it effectively gives up its purchase money status.

Because we hold that BWAC's exercise of the after-acquired property and future advances clauses in its security agreements voided its PMSI, we need not reach the other issues raised by the Bank. We also do not reach the issue raised by BWAC concerning the district court's reference to proceeds from sales of the inventory being held "in trust." Whether the proceeds are held "in trust" is relevant only to the issue of damages. The district court entered final judgment only on the claim for declaratory relief and referred the damage claim to a magistrate. Because no final judgment has been entered as to damages, that issue is not properly before this Court.

AFFIRMED.