**In re Clayton Earl CAMPBELL, Sr. Vivian Lee Campbell, Debtors.**

**Bankruptcy No. 90–01360. Misc. No. 91–0020.**

United States Bankruptcy Court, S.D. Alabama.

April 19, 1991.

Thomas ap Roger Jones, Selma, Ala., movant.

Robert R. Blair, Salem, Ala., for debtors.

Robert H. Allen, trustee.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge:

This matter came on for hearing on the motion of the Movant, Sears, Roebuck & Company, for relief from the automatic stay, and the objection of the Debtors, Clayton Earl Campbell, Sr., and Vivian L. Campbell, to the Defendant's motion for relief from the automatic stay. Appearing were: Thomas ap Roger Jones, attorney for the Movant; Robert R. Blair, attorney for the Debtors; and Robert H. Allen, Trustee. After due consideration of affidavit, exhibits, arguments of counsel and briefs subsequently submitted, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

The Debtor, Vivian L. Campbell, opened a Searscharge PLUS Account with the Movant, Sears, Roebuck & Company, under which the Debtor granted the Movant a security interest in merchandise purchased. Paragraph 7 of the "Searscharge PLUS Security Agreement" ("security agreement") signed by the Debtor is entitled "Security interest in Goods" and reads as follows:

> Sears has a security interest under the Uniform Commercial Code in all merchandise charged to the account. If I do not make payments as agreed, the security interest allows Sears to repossess only the merchandise which has not been paid in full. Upon my default, Sears may charge me reasonable attorneys fees. I am responsible for any loss or damage to the merchandise until the price is fully paid. Any payments I make will first be used to pay unpaid Insurance or Finance Charge(s) and then to pay for the earliest charges on the account. If more than one item is charged on the same date, my payment will apply first to the lowest prices items.

The Debtor purchased a $399.99 video cassette recorder ("VCR") on her charge account on December 23, 1988.[1] The sales ticket documenting the purchase contained the following language:

> This credit purchase is subject to the terms of my SearsCharge agreement which is incorporated herein by reference and identified by the above account num-

---

1. The sales ticket indicates that the Debtor also purchased a pre-recorded tape ($19.95), a blank VHS tape ($3.99) and a three-year maintenance program ($120.00). The sales tax on the purchase was $29.68 for a total charge of $573.61.

ber. I grant Sears a security interest or lien in this merchandise, unless prohibited by law, until paid in full.

The Movant is a secured creditor under the terms of the security agreement.

A summary of the Debtor's purchases, finance charges and payments under the charge account follows:

| Transaction Date | Purchase | Finance Charge | Payment | Balance | Statement Date |
|---|---|---|---|---|---|
| 12/09/88 | | | $ 39.00 | $ 716.49 | 12/28/88 |
| 12/23/88 | $573.61 | | | 1,290.10 | 12/28/88 |
| 12/28/88 | | 14.14 | | 1,304.24 | 12/28/88 |
| 1/20/89 | | | 37.00 | 1,267.24 | 1/28/89 |
| 1/28/89 | | 21.14 | | 1,288.38 | 1/28/89 |
| 2/28/89 | | 20.89 | | 1,309.27 | 2/28/89 |
| 3/23/89 | | | 36.00 | 1,273.27 | 3/28/89 |
| 3/28/89 | | 20.89 | | 1,294.16 | 3/28/89 |
| 4/14/89 | | | 72.00 | 1,222.16 | 4/28/89 |
| 4/28/89 | | 20.58 | | 1,242.74 | 4/28/89 |
| 5/10/89 | | | 36.00 | 1,206.74 | 5/28/89 |
| 5/28/89 | | 20.07 | | 1,226.81 | 5/28/89 |
| 6/28/89 | | 19.98 | | 1,246.79 | 6/28/89 |
| 7/20/89 | | | 72.00 | 1,174.79 | 7/28/89 |
| 7/28/89 | | 19.85 | | 1.194.64 | 7/28/89 |
| 8/28/89 | | 19.50 | | 1,214.14 | 8/28/89 |
| 9/28/89 | | 19.50 | | 1,233.64 | 9/28/89 |
| 10/04/89 | | | 72.00 | 1,161.64 | 10/28/89 |
| 10/28/89 | | 19.34 | | 1,180.98 | 10/28/89 |
| 11/28/89 | | 19.30 | | 1,200.28 | 11/28/89 |
| 12/08/89 | | | 72.00 | 1,128.28 | 12/28/89 |
| 12/17/89 | $ 36.00 | | | 1,164.28 | 12/28/89 |
| 12/28/89 | | 19.17 | | 1,183.45 | 12/28/89 |
| 1/28/90 | | 19.34 | | 1,202.79 | 1/28/90 |
| 2/08/90 | | | 108.00 | 1,094.79 | 2/28/90 |
| 2/28/90 | | 18.67 | | 1,113.46 | 2/28/90 |
| 3/28/90 | | 18.30 | | 1,131.76 | 3/28/90 |
| 4/12/90 | | | 64.00 | 1,067.76 | 4/28/90 |
| 4/28/90 | | 18.09 | | 1,085.85 | 4/28/90 |
| 5/28/90 | | 17.90 | | 1,103.75 | 5/28/90 |
| 6/12/90 | | | 64.00 | 1,039.75 | 6/28/90 |
| 6/28/90 | | 17.68 | | 1,057.43 | 6/28/90 |
| 7/28/90 | | 17.48 | | 1,074.91 | 7/28/90 |
| 8/28/90 | | 17.48 | | 1,092.39 | 8/28/90 |
| 9/28/90 | | 17.48 | | 1,109.87 | 9/28/90 |

The balance of the Debtor's charge account before the VCR purchase was $716.49; after the purchase, the balance of the Debtor's account was $1,290.10. The Debtor made only one $36.00 charge after purchasing the VCR. From December 23, 1988 to June 28, 1990, the Debtor made payments of $633.00. Under the terms of the security agreement, payments to the Debtor's account were applied first to finance charges and then to the earliest purchases on the account. The finance charges for the Debtor's account from December 23, 1988 to September 28, 1990 were $416.77. The Debtor's total liability under the charge account after application of all payments as of September 28, 1990 is $1,109.87. The resale value of the VCR is $299.58. The Debtor has no equity in the property at issue.

The Debtors filed a Chapter 7 petition with this Court on July 9, 1990. The Movant filed a motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) (1988) to foreclose on its security interest in the VCR on January 4, 1991. The property at issue is exempt property. The

Debtor objected to the granting of the motion for relief from stay.

## CONCLUSIONS OF LAW

■ The issue before this Court is whether the terms of the Debtor's charge account agreement and the sales ticket terminate the purchase money nature of the Movant's security interest in the VCR. The Debtor asserts that the purchase money status of the Movant's security interest was destroyed by the terms of its security agreement under which individual purchases are used to secure the entire charge account debt. This Court finds the Movant's purchase money security interest was not destroyed under the terms of the Debtor's security agreement.

Section 7–9–107 of the Code of Alabama (1975) defines a purchase money security interest as a security interest "[t]aken or retained by the seller of the collateral to secure all or part of its price ..." A key characteristic of the purchase money interest is that the interest cannot go beyond the price of what is purchased in the transaction wherein the interest is created. *In re Manuel,* 507 F.2d 990, 993 (5th Cir.1975). Under the "transformation" rule, courts have held that a purchase money security interest converts to an ordinary security interest whenever the collateral is used to secure more than the purchase price of the collateral. *See Southtrust Bank v. Borg–Warner Acceptance Corp.,* 760 F.2d 1240, 1242 (11th Cir.1985). This conversion can occur in the context of a revolving credit account when a seller consolidates more than one purchase under the same credit agreement and arranges the transaction so that the seller retains title to all of the goods until the last item is paid off. *In re McCall,* 62 B.R. 57, 58–59 (Bankr.M.D.Ala. 1985). In *In re Jebbia,* 9 B.R. 542, 543 (Bankr.S.D.Ala.1982), the bankruptcy court for the Southern District of Alabama held that an " 'add-on' system of combining the purchase contracts destroys the 'purchase money' feature of the contracts; and converts them into security interests which must be perfected in accordance with Section 9–302 of the Uniform Commercial Code ..."

Some courts have held that the purchase money aspect of a security interest is not lost if there is some mechanism for determining the extent to which the interest is purchase money. The bankruptcy court in *In re Staley,* 426 F.Supp. 437, 438 (M.D.Ga. 1977), upheld a purchase money security interest because the terms of the credit agreement specifically provided that the security interest in the collateral would end as soon as the purchase price of the collateral was paid. The Eleventh Circuit noted in dicta that "[w]ithout some guidelines, legislative or contractual, the court should not be required to distill from a mass of transactions the extent to which a security interest is purchase money." *Southtrust Bank v. Borg–Warner Acceptance, Corp.,* 760 F.2d at 1243 (*quoting In re Coomer,* 8 B.R. 351, 355 (Bankr.E.D.Tenn.1980)). The bankruptcy court in *In re McCall,* 62 B.R. 57, 59 (Bankr.M.D.Ala.1985) noted that "a purchase money security interest can survive an 'add-on' sale when express contractual language allocating payments is present." The security agreement in *McCall* provided for a "first in, first out" (FIFO) system of allocating payments which applied payments to debts in the order in which those debts were incurred.

■ The purchase money character of a security interest is destroyed[2] when individual purchases under a charge agreement are combined to secure the entire debt of the account unless a statutory or contractual mechanism exists for determining the extent of the purchase money interest. The purchase money security interest containing such a mechanism survives until the purchase price of the property is paid in full. The Movant's security agreement contains a provision for allocating the payments to specific debts wherein payments are applied first to finance charges incurred and then to the earliest purchases

---

**2.** The resulting security interest must comply with Section 9–302 of the Uniform Commercial Code to be perfected.

on the account.[3] This Court finds that the Movant has a properly perfected secured interest in the property at issue.

The Debtor's liability prior to the VCR purchase was $716.49. The Debtor paid $633.00 on the account after the purchase. The finance charges on the Debtor's account totalled $416.77. The Debtor's payments went initially to the finance charges on the account and then to the pre-VCR debt under the FIFO method; none of the payments have gone to the purchase price of the VCR. Consequently, the Debtor has no equity in the property. This Court finds the Movant to be entitled to relief from the automatic stay under 11 U.S.C. § 362(d) (1988). Based on the foregoing, the Movant's motion for relief from the automatic stay is due to be granted, and the Debtor's objection to such relief is due to be denied.

---

**3.** This provision is essentially a FIFO method of accounting.