In re James E. FREEMAN, Debtor.

**SNAP–ON TOOLS, INC.,**
**Plaintiff–Appellant,**

v.

**James Edward FREEMAN,**
**Defendant–Appellee,**

**Thomas E. Reynolds, Trustee.**

No. 91–7341.

United States Court of Appeals,
Eleventh Circuit.

March 23, 1992.

* *See* Rule 34–2(b), Rules of U.S. Court of Appeals    for the Eleventh Circuit.

Ruth Simmons Capra, Birmingham, Ala., for plaintiff-appellant.

Cindee Dale Holmes, Morris & Vann, Birmingham, Ala., for defendant-appellee.

Before KRAVITCH, Circuit Judge, GODBOLD and JOHNSON *, Senior Circuit Judges.

GODBOLD, Senior Circuit Judge:

This is an appeal by a creditor from a bankruptcy court judgment permitting debtor to avoid the creditor's lien as a nonpossessory, non-purchase money security interest. We affirm.

Freeman is an auto mechanic. Beginning some time before June 1987, a Snap-

On dealer sold tools to Freeman on a non-interest bearing "Revolving Account" (RA) basis. In February 1988 Freeman purchased new tools, and the dealer assigned his interest in the RA to Snap–On. Snap–On financed the purchase and executed an "Extended Credit" agreement (EC) with Freeman. The property was described on an attached invoice. Included as security were the tools from the RA.

Freeman continued to buy tools on the dealer's RA. He made weekly payments to the dealer, who applied these payments to the EC until the monthly payment was met, and then applied the remainder to the RA balance. In July 1988 Freeman purchased additional tools, and Snap–On entered into a second financing agreement. It retained a security interest in the new tools and in tools purchased on the dealer's RA and in the tools from the February agreement. The balance on the February agreement was brought forward and included on the July 11 agreement.

On November 1, 1988, Snap–On entered into a third agreement with Freeman. The balances and the merchandise from the previous two EC agreements were brought forward. Snap–On filed a UCC–1 financing statement on November 18, 1988 in which it listed, among other tools, an air ratchet and an impact wrench that were purchased prior to the February 1, 1988 agreement.

Freeman filed a Chapter 13 bankruptcy petition in February 1989. He converted this to Chapter 7 in September. As required by Rule 1007, Freeman listed his creditors, including Snap–On Tools as a secured creditor. Pursuant to 11 U.S.C. § 521(2)(A), which requires a debtor to indicate "his intention with respect to the retention or surrender of such property and, if applicable, [to] specify[ ] that such property is claimed as exempt ... or that the debtor intends to reaffirm debts secured by such property," Freeman did not claim an exemption for the tools, and he reaffirmed the debt owed Snap–On. He listed the tools as having a market value of $3500

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

and noted that they were encumbered by a debt of $4,496.22. Snap–On moved for relief from the automatic stay. Freeman moved to avoid Snap–On's lien, characterizing it as a "nonpossessory, nonpurchase-money security interest," pursuant to 11 U.S.C. § 522(f)(2).

In March 1990, Freeman filed amended schedules of personal property and of property claimed as exempt. Included in this amendment were the Snap–On tools with a stated value of $2500. The bankruptcy court held a hearing on the motions of the parties', described above. At this hearing, the issue was whether Snap–On had lost its purchase money security interest by consolidating the extended credit agreements. Freeman testified that the tools were worth $2500 at most and, more likely, less than $2000. Snap–On neither refuted this testimony nor lodged an objection to Freeman's amendment of his schedule of personal exemptions.

The bankruptcy court determined that Snap–On had lost its purchase money security interest by consolidating the debts and granted Freeman's motion to avoid Snap–On's lien. The court based this conclusion on a finding that the "first-in/first-out" allocation method used by Snap–On was inadequate to determine which tools had been paid for and which still secured their purchase money.

Snap–On appealed to the district court. In the list of issues required to be submitted by Bankr.Rule 8006, 11 U.S.C., Snap–On stated that the issues were:

(a) Whether the purchase-money security interest in the tools was transformed into a nonpurchase-money security interest by consolidation with a new purchase.

(b) If the purchase-money security interest was not destroyed by such consolidation, whether the Creditor's security agreement language, providing for a "first-in/first-out" method of payment allocation, was an adequate payment allo-

cation method so as to preserve Creditor's purchase-money security interest.

In its district court brief Snap–On raised additional issues that had not been listed in the Designation of Record on Appeal and had not been raised before the bankruptcy court.[1] The district court held that the bankruptcy court's judgment was free from error and affirmed. 124 B.R. 840. The court declined to consider the issues not included in the designation of record on appeal.

This court reviews the bankruptcy court's judgment, *In re Thomas*, 883 F.2d 991, 994 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990), and will not overturn its findings of fact unless clearly erroneous. *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990). Conclusions of law are reviewed *de novo*. *Id.*

■ A debtor can avoid a lien if the lien:
(1) impairs an exemption to which the debtor is entitled;
(2) is a non-possessory, non-purchase money security interest; and
(3) applies to tools of the debtor's trade.
11 U.S.C. § 522(f)(2)(A). No one disputes that the property at issue are tools of Freeman's trade. Alabama permits a debtor to exempt up to $3000 of personal property, including tools of trade. Ala.Code §§ 6–10–6, 6–10–126.

■ Pursuant to Alabama Code § 7–9–107, a security interest is a "purchase money security interest" to the extent that it is:

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

A security interest in collateral is "purchase money" to the extent that the item

---

1. Snap–On asserted that Freeman should not have been permitted to amend his schedule of exemptions six months after he had filed his petition and after Snap–On had affirmatively relied on his selection of exemptions. Snap–On also asserted that Freeman could claim an exemption for tools of the trade only to the extent of his equity interest.

secures a debt for the money required to make the purchase. If an item of collateral secures some other type of debt, e.g., antecedent debt, it is not purchase money. *In re Fickey*, 23 B.R. 586, 588 (Bankr. E.D.Tenn.1982). A purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created. *In re Manuel*, 507 F.2d 990, 993 (5th Cir.1975).

Snap–On asserts that the following language, contained in each agreement, created a purchase money security interest (PMSI):

> Until said TIME BALANCE and all other amounts and charges due or to become due hereunder have been paid in full, [Snap–On] shall retain a *Security Interest* in the said property.

The agreements referred to attached invoices. Those invoices listed property that had been purchased on the dealer's revolving account as security for the new purchases. Snap–On did not advance Freeman the price of the RA items. This is vividly illustrated by the November agreement under which Freeman purchased a magnet for $1.07 and transferred several hundred dollars from the RA. Snap–On used tools previously purchased on the RA to secure a debt owed the dealer, which the dealer assigned to Snap–On. This militates against the finding of a PMSI.

Further, for the court to enforce a PMSI that consolidates a customer's secured debts, as Snap–On did here, the lender must provide some method "for determining the extent to which each item of collateral secures its purchase money." *Southtrust Bank of Alabama, Nat. Asso. v. Borg–Warner Acceptance Corp.*, 760 F.2d 1240, 1243 (11th Cir.1985).

> "Without some guidelines, legislative or contractual, the court should not be required to distill from a mass of transactions the extent to which a security interest is purchase money." (quoting *In re Coomer*, 8 B.R. 351, 355, (Bankr. E.D.Tenn.1980)). Unless the lender contractually provides some method for determining the extent to which each item of collateral secures its purchase money, it effectively gives up its purchase money status.

*Id.* at 1243. Payments to Snap–On were to be allocated on a "first in first out" basis as provided for in each agreement:

> If the net balance on account from prior Purchase Money Security Agreements is transferred to this agreement ... it is intended by the parties that [Snap–On] shall retain a purchase money security interest in the property purchased under and described in prior agreements, ... to the extent such property secures its purchase money, applying the First In First Out method of payment allocation to the Time Balance.

This method provides no allocation among sales tax, interest, and purchase price although Snap–On must have intended to be paid for all three items. Because the method for allocating the payments made by Freeman is inadequate to determine which tools have been paid for and which secure their own purchase price, Snap–On's security interest does not survive the consolidation of debts.

Bankruptcy Rule 8006 directs an appellant to file with the clerk and serve on the appellee "a designation of the items to be included in the record on appeal and a statement of the issues to be presented." An issue that is not listed pursuant to this rule and is not inferable from the issues that are listed is deemed waived and will not be considered on appeal. *Energrey Enterprises, Inc. v. Oak Creek Energy Systems, Inc.*, 119 B.R. 739 (E.D.Cal.1990); *In re Connecticut Aerosols, Inc.*, 42 B.R. 706 (D.Conn.1984).

Snap–On did not list the issues of whether a debtor can amend a schedule of exemptions and whether a debtor can exempt property only to the extent of his equity interest in its Designation of the Record on Appeal. Further, it did not raise these issues with the bankruptcy court. Since these issues are not inferable from the issues that were properly raised, we will not consider them in this decision.

AFFIRMED.