**In re Arlinda Arnita LEE, Debtor.**

**Arlinda Arnita LEE, Movant,**

v.

**DAVIS/McGRAW, INC., Respondent.**

**Bankruptcy No. 93–11823.**

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

July 18, 1994.

791

Lee Ringler, Augusta, GA, for debtor/movant.

J. Benjamin Kay, III, Augusta, GA, for respondent.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

By motion filed December 10, 1993 the debtor, Arlinda Arnita Lee seeks to avoid the security interest of her creditor Davis/McGraw, Inc. ("Davis/McGraw") in certain household goods and furnishings pursuant to 11 U.S.C. § 522(f)(2)(A).[1] The only issue is whether the security interest of Davis/McGraw is purchase money. Having heard the evidence presented, considered arguments of counsel, and consulted applicable authorities, I enter the following order granting debtor's motion.

1. Section 522(f) provides in pertinent part: Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(2) a nonpossessory, nonpurchase-money security interest in any—

Debtor filed this chapter 13 case on November 8, 1993. Davis/McGraw filed a proof of secured claim in the amount of $1,746.06 representing the outstanding debt owing from two credit transactions entered into with debtor. On March 25, 1993 debtor purchased table lamps from Davis/McGraw under a retail installment contract and security agreement. On April 29, 1993, debtor purchased bedding, king/queen rails, and a headboard (collectively "bed") under a similar arrangement. The $207.78 outstanding balance owing on the lamps was consolidated with the cash price for the bed, $1,393.35, along with insurance charges of $249.49 for a total amount financed of $1,850.62. A finance charge of $421.01 was assessed bringing the total of payments to $2,271.63 to be paid in twenty monthly installment payments of $109.00 and one installment of $91.63.

In the bankruptcy case, debtor filed a motion to avoid the lien of Davis/McGraw. A notice was issued requiring a response by the creditors not later than January 5, 1994. As no response was filed the motion was granted by order entered January 11, 1994. Subsequently, on objection by Davis/McGraw at confirmation hearing, debtor consented to reconsideration of the order granting lien avoidance allowing for this resolution on the merits rather than by default. In response Davis/McGraw orally withdrew its objection to confirmation. At hearing debtor contended that the consolidation of collateral and refinancing of the debt by Davis/McGraw rendered its security interest nonpurchase money and that Davis/McGraw failed to present evidence of how payments by debtor had been applied. Davis/McGraw contends that the retail installment contract gave it a security interest in the goods purchased and that it did not matter to which item of collateral it applied payments.

(A) household furnishings, household goods, ... that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor[.]

The retail installment contract at issue contains the following relevant grant of a security interest.

> .... Seller retains title to and a security interest as provided in the Uniform Commercial Code of Georgia in this and any previously purchased merchandise described below until the total of payments is paid in full.
>
> Buyer has requested Seller to re-finance prior contract(s) No. _____.[2]
>
> The unpaid balance of such prior contract(s) is included above as Net Balance Prior Contract. The security interest under the Uniform Commercial Code granted by Buyer(s) to Seller to the property identified in such prior contract(s) shall remain in full force and effect.

The contract also contains a payment allocation formula:

> Each payment shall be credited first to earned unpaid finance charge; then, as to goods purchased on different dates, the first purchased shall be deemed first paid for, and, as to goods purchased on the same date, the lowest priced shall be deemed first paid for.

■■■ The definition of purchase money security interest is not contained in the Bankruptcy Code, but is determined by state law. *See In re Freeman,* 956 F.2d 252, 254 (11th Cir.1992). The Official Code of Georgia Annotated ("O.C.G.A.") § 11–9–107 provides

> A security interest is a "purchase money security interest" to the extent that it is:
>
> (a) Taken by the seller of the collateral to secure all or part of its price; or
>
> (b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

"[A] purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created." *In re Manuel,* 507 F.2d 990, 993 (5th Cir.1975). Two recent decisions by the Eleventh Circuit Court of Appeals discussing this definition control the outcome in this case. In *Southtrust Bank v. Borg–Warner Acceptance Corp.,* 760 F.2d 1240, 1243 (11th Cir.1985) the court interpreted identical Alabama and Georgia statutory definitions [3] and held that a purchase money inventory financier who was second to file a financing statement lost its purchase money status and priority when it exercised future advances and after-acquired property clauses in its security agreements.[4] In *In re Freeman,* 956 F.2d 252, 255 (11th Cir.1992) under Alabama law a creditor's purchase money security interest in tools did not survive a consolidation of debts when the contractual payment formula did not allocate payments between sales tax, interest, and purchase price.

Because creditors often combine a customer's secured debts, through future advance and after-acquired property clauses, refinancing or consolidation, rules have developed to aid in determining whether a creditor's security interest retains its purchase money status after such transactions. The "transformation rule" holds that a "purchase money security interest used to secure the purchase price of goods sold in a particular transaction is 'transformed' into a nonpurchase money security interest when antecedent or after-acquired debt is consolidated with the new purchase under one contract." *In re Freeman,* 124 B.R. 840, 843 (N.D.Ala. 1991), *aff'd,* 956 F.2d 252 (11th Cir.1992). This rule is premised upon the recognition that when items purchased at different times are made to secure a combined debt, then each item secures both its own purchase price as well as the purchase price of the

---

2. A contract number intended for this space is typed over a sentence in the prior paragraph and is illegible.

3. Both Georgia and Alabama have enacted the standard Uniform Commercial Code ("U.C.C.") definition of purchase money security interest without alteration. *Compare* U.C.C. § 9–107; O.C.G.A. § 11–9–107; Ala.Code § 7–9–107.

4. As an exception to the first to file rule, a purchase money security interest in inventory has priority over a conflicting security interest in the same inventory. *See* O.C.G.A. § 11–9–312(3); Ala.Code § 7–9–312(3).

other goods. *See, Manuel* at 992; *In re Norrell,* 426 F.Supp. 435, 436 (M.D.Ga.1977).

The transformation rule has been criticized as too restrictive. The "dual status rule" recognizes that an item of collateral may secure both a purchase money and nonpurchase money debt. This approach follows the explicit language of Uniform Commercial Code § 9–107, holding that "a purchase money security in a quantity of goods can remain such 'to the extent' it secures the price of that item, even though it may also secure the payment of other articles." *In re Pristas,* 742 F.2d 797, 800–801 (3d Cir.1984); *see, e.g., In re Linklater,* 48 B.R. 916 (Bankr.D.Nev. 1985). Similarly, "[a] security interest in an item of collateral is 'purchase money' to the extent the item secures a debt incurred to enable the debtor to make the purchase. To the extent an item of collateral secures some other kind of debt, the security interest in an item is not purchase money." *In re Fickey,* 23 B.R. 586, 588 (Bankr.E.D.Tenn.1982).

▆ In both *Southtrust Bank* and *Freeman* the Eleventh Circuit recognizes that under the "transformation rule" in situations where collateral secures both purchase money and nonpurchase money debt any claimed purchase money security interest in the collateral will be destroyed unless there is some contractual or state law allocation method for determining the extent of the purchase money security interest.

'Without some guidelines, legislative or contractual, the court should not be required to distill from a mass of transactions the extent to which a security interest is purchase money.' (quoting *In re Coomer,* 8 B.R. 351, 355 (Bankr.E.D.Tenn. 1980)). Unless a lender contractually provides some method for determining the extent to which each item of collateral secures its purchase money, it effectively gives up its purchase money status.

*Southtrust Bank* at 1243 (as quoted by *Freeman,* 956 F.2d at 255).[5] In *Southtrust Bank* neither the contract nor state law allocated payments to any particular item of inventory. Accordingly, in the absence of such a saving allocation, the creditor's exercise of after-acquired property and future advance clauses in its security agreement voided its purchase money security interest. 760 F.2d at 1243. In *Freeman,* the creditor's security agreements did provide for a "first in first out" allocation method.

If the net balance on account from prior Purchase Money Security Agreements is transferred to this agreement ... it is intended by the parties that [Snap–On] shall retain a purchase money security interest in the property purchased under and described in prior agreements, ... to the extent such property secures its purchase money, applying the First In First Out method of payment allocation to the Time Balance.

956 F.2d at 255. The court, however, held that because this method provided no allocation between sales tax, interest, and purchase price, it was inadequate to determine which tools were paid for and which secured their own purchase price. Therefore, the creditor's purchase money security interest did not survive a consolidation of debts. *Id.* In so holding the Eleventh Circuit implicitly

---

**5.** This approach is in accord with the recognition that the dual status rule is simply a qualification of the transformation rule.

Both rules are based on the same fundamental assumption that purchase money debt and collateral can never really be consolidated and cross-collateralized. Even if the debt from two successive purchases is consolidated as a matter of accounting, it is assumed that the separate "prices" of each item survive and can be (indeed must be) correlated to separate items of collateral. This is true even if, as in the consumer add-on cases, each successive debt and each item of collateral would have purchase money status considered in isolation. The difference between ... the transformation rule and the dual status rule is only in the harshness of the penalty imposed if the creditor tries to accomplish anything more complex than a series of discrete, unrelated, and successive purchase money transactions. Under the transformation rule, purchase money status is lost entirely. Under the dual status rule, the loss of purchase money status may be partial only if the creditor has a payment allocation method which enables him to isolate the remaining "price" of particular items of collateral. The dual status rule is thus merely a less punitive qualification of the transformation rule, not a rule built on a different foundation.

Mark B. Wessman, *Purchase Money Inventory Financing: The Case for Limited Cross–Collateralization,* 51 Ohio St.L.J. 1283, 1313 (1990).

adopts the narrow interpretation that "the all or part of its price" provision found in the definition of purchase money security interest, *see* O.C.G.A. § 11–9–107(a), refers only to the "cash price" of the collateral purchased in the transaction and not to other amounts associated with the cost of the credit transaction such as finance, insurance or other charges. In *Freeman,* the court selected interest and sales tax as items which are not included as part of the price of collateral entitled to purchase money status. While other courts have rejected this position, reasoning that this approach ignores commercial reality and the nature of such credit arrangements, *see, In re Pristas supra ;*[6] *In re McCall,* 62 B.R. 57, 59–60 (M.D.Ala.1985), *Freeman* is binding precedent on this court. "[S]tare decisis requires that a court follow its own, or its Circuit's earlier determination as to the law of a state in the absence of any subsequent change in the state law." *Owens–Illinois, Inc. v. Aetna Casualty and Surety Co.,* 597 F.Supp. 1515, 1520 (D.D.C. 1984) (citing *Newell v. Harold Shaffer Leasing Co.,* 489 F.2d 103, 107 (5th Cir.1974)). Although the *Freeman* court interpreted the purchase money security interest definition contained in the Alabama Code, the Georgia Code provision is identical. Further, no Georgia state courts have as yet addressed the scope of the price requirement or the adequacy of a contractual payment allocation formula under the Georgia Code purchase money provision.

In this case, the payment allocation formula contained in Davis/McGraw's installment contract is not adequate as it does not contain a payment allocation among sales tax, interest, insurance and purchase price. Additionally, Georgia has no such statutory for-

mula, a "legislative guideline," *see Coomer, supra* as quoted in *Freeman* and *Southtrust,* which would save the purchase money status of Davis/McGraw's security interest. Georgia does have a statute which provides for allocation of payments on revolving accounts, but that statute is not applicable to the retail installment contract at issue in this case. *See* O.C.G.A. §§ 10–1–8; 10–1–2(a)(9), (12). Moreover, the appellate court in *Norrell* refused to apply that statute to a determination of purchase money status holding that "[t]he statute has nothing to do with the creation, duration, definition, or enforcement of purchase money security interests in consumer goods...." 426 F.Supp. at 436.

The debt secured in this case by the Davis/McGraw contract contains both purchase money and nonpurchase money components. Accordingly, in the absence of a saving payment allocation formula provided by contract or state statute, the security interest of Davis/McGraw cannot retain purchase money status as it secures more than the "price" of the collateral purchased in the transaction in which the interest was created.

Therefore, having determined that the security interest of creditor Davis/McGraw is nonpurchase money in nature, it is hereby ORDERED that the debtor's motion to avoid the security interest of Davis/McGraw pursuant to 11 U.S.C. § 522(f) is granted.

---

**6.** We have little difficulty in concluding that "price" includes not only the actual costs of the goods but also financing charges and sales tax. That interpretation of the statute is but a recognition of the realities of the market place in today's credit-oriented society.

742 F.2d at 800.