**In the Matter of Kenneth C. HILLARD and Sarah A. Hillard, Debtors.**

**Bankruptcy No. 96–80553.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

July 24, 1996.

Vera Hollingsworth, Decatur, AL, for Debtors.

Joan Marie Kettell, Huntsville, AL, for Creditor (American General Finance).

## ORDER

JACK CADDELL, Bankruptcy Judge.

This matter is before the Court on the motion of the debtors seeking to avoid the lien of American General Finance ("American") to the extent that such lien impairs their exemption in household goods pursuant to 11 U.S.C. § 522(f)(2) of the United States Bankruptcy Code (the "Code").

The facts of the case are essentially undisputed. On September 5, 1995, American financed the debtors' purchase of certain household goods from Holderfields' Furniture, taking a purchase money security interest against the household goods in the amount of $2,525.84. The terms of the retail installment contract included a one year payment period with monthly payments of $231.56 at 17.99% interest.

On January 30, 1996, the debtors refinanced the loan by executing a Note and Security Agreement with American in the amount of $2,057.11. American included a provision in the accompanying Disclosure Statement, pursuant to which American purported to retain "a secured purchase money interest" in the household goods initially financed by American on September 5, 1995. In addition to satisfying the original loan, American advanced $25.71 to pay the debtors' Single Decreasing Credit Life Insurance premium, and included a $15.00 UCC–1 recording fee to the financed amount. The new note also increased the interest rate from 17.99% to 22.36%, extended the payment period from one year to eighteen (18)

months, and decreased the monthly payments from $252.00 to $141.00.

On February 23, 1996, the debtors filed a voluntary petition under Chapter 7 of Title 11 of the Bankruptcy Code. Then on the 18th day of April 1996, the debtors filed the present motion to avoid lien, and assert in support thereof that American lost its purchase money security interest in the household goods upon refinancing the same. American contends that the resulting lien is a purchase money security interest not subject to avoidance under Section 522(f) of the Bankruptcy Code which provides in pertinent part as follows:

(f)(1) Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . .

(B) a nonpossessory, nonpurchase-money security interest in any—
(i) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor[.]

■ The definition of purchase money security interest in not contained in the Bankruptcy Code. Accordingly, the Court must consider relevant state law to determine whether American lost its purchase money security interest in the debtors' household goods upon refinancing the previously purchased items. *In re Carter,* 169 B.R. 227 (Bankr.M.D.Ga.1993). Alabama enacted the standard Uniform Commercial Code definition of purchase money security interest under which:

[a] security interest is a "purchase money security interest" to the extent that it is:
(a) Taken by the seller of the collateral to secure all or part of its price; or
(b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights

in or the use of collateral if such value is in fact so used.

ALA.CODE § 7–9–107 (1975).

■ In *Snap–On Tools, Inc. v. Freeman (In re Freeman),* 956 F.2d 252 (11th Cir. 1992), the Court of Appeals for the Eleventh Circuit interpreted section 7–9–107 as follows:

A security interest in collateral is 'purchase money' to the extent that the item secures a debt for the money required to make the purchase. If an item of collateral secures some other type of debt, e.g., antecedent debt, it is not purchase money. *In re Fickey,* 23 B.R. 586, 588 (Bankr. E.D.Tenn.1982). A purchase money security interest cannot exceed the price of what is purchased in the transaction wherein the security interest is created. *In re Manuel,* 507 F.2d 990, 993 (5th Cir. 1975).

The underlying purpose of the purchase money security interest is the protection of consumer, as well as commercial, purchasers. *Southtrust Bank of Ala. Nat'l Ass'n v. Borg–Warner Acceptance Corp.,* 760 F.2d 1240 (11th Cir.1985) (determining that a commercial creditor lost its purchase money security interest upon exercising future advance and after-acquired property clauses contained in the creditors security agreement).

■ "There is a split of authority among the circuits concerning whether a purchase money security interest is extinguished when the original purchase money loan is refinanced through renewal or consolidation with another obligation." *In re Short,* 170 B.R. 128, 132 (Bankr.S.D.Ill.1994). The first line of cases follow the transformation rule pursuant to which a "purchase money security interest used to secure the purchase price of goods sold in a particular transaction is 'transformed' into a nonpurchase money security interest when antecedent or after-acquired debt is consolidated with the new purchase under one contract." *In re Freeman,* 124 B.R. at 840. Because the resulting lien no longer qualifies as purchase money, the lien can be avoided pursuant to Section 522(f) of the Bankruptcy Code. *In re Short,* 170 B.R. at 132–33.

■ Jurisdictions following the "dual status rule" criticize the transformation rule as being unnecessarily restrictive, and ignoring the commercial reality of the credit transactions. *In re Freeman*, 124 B.R. at 843; *Lee v. Davis/McGraw, Inc. (In re Lee)*, 169 B.R. 790, 793 (Bankr.S.D.Ga.1994). The dual status rule is premised upon the phrase "to the extent" found in Section 9–107 of the UCC. Court's that apply this rule hold "that a lien may be partially purchase-money and partially nonpurchase-money and that the purchase money aspect of a lien is not automatically destroyed by refinancing or consolidation with other debt." *In re Short*, 170 B.R. at 132. Under this approach, American's security interest in the debtors' household goods would be purchase money to the extent that it secures the original purchase price of the goods.

However, the Eleventh Circuit declined the defendant's invitation to adopt the dual status rule in the case of *In re Southtrust Bank*, 760 F.2d at 1243. For the court, Judge Tuttle responded:

'Without some guideline, legislative or contractual, the court should not be required to distill from a mass of transactions the extent to which a security interest is purchase money.' (quoting *In re Coomer*, 8 B.R. 351, 355 (Bankr.E.D.Tenn.1980)). Unless the lender contractually provides some method for determining the extent to which each item of collateral secures its purchase money, it effectively gives up its purchase money status.

*Id.* at 1243.

Then, in the case of *In re Freeman*, 956 F.2d 252 (11th Cir.1992), the Eleventh Circuit implicitly adopted the transformation rule. *In re Lee*, 169 B.R. at 793. Thus, the outcome of this case shall be controlled by the transformation rule. *In re Lee*, 169 B.R. at 793 (recognizing that stare decisis requires courts in the Eleventh Circuit to follow *In re Freeman*). However, the Court recognizes that the present case is somewhat distinguishable from the facts presented *In re Freeman*.

At issue in *In re Freeman* was whether a creditor lost its purchase money security interest where the creditor consolidated the debtor's purchase of tools on a revolving credit account. The security agreement included a first-in/first-out payment schedule, but failed to include a provision for the allocation of payments between sales tax, interest, and the purchase price of the tools. The Eleventh Circuit held that the creditor's security interest did not survive the debt consolidation because the payment allocation method contained in the security agreement was "inadequate to determine which tools ha[d] been paid for and which secure[d] their own purchase price." *Id.* at 255. For the court, Judge Godbold explained as follows:

[L]ender[s] must provide some method 'for determining the extent to which each item of collateral secures its purchase money.' *Southtrust Bank of Alabama, Nat. Ass'n v. Borg–Warner Acceptance Corp.*, 760 F.2d 1240, 1243 (11th Cir.1985).

. . .

Because the method for allocating the payments made by Freeman is inadequate to determine which tools have been paid for and which secure their own purchase price, [the creditor's] security interest does not survive the consolidation of debts.

*Id.*

In the present case, American refinanced the debtors' original purchase by extending the payment terms and lowering the monthly payments due under the terms of the new note. The debtors argue that new consideration was also given because American increased the interest rate and added approximately $35.00 to the amount financed under the new note. In the case of *In re Hatfield*, 117 B.R. 387, 389 (Bankr.C.D.Ill.1990), the court held that the purchase money character of a creditor's security interest survived a simple refinancing where "[t]he only changes involved in the refinanced note were an extended payment period and a small reduction in the amount of the monthly payments." The Illinois Bankruptcy Court rejected the dual status and transformation rules, and instead adopted a case by case analysis under which the court considered the degree by which the original obligation changed upon being refinanced. Applying this analysis, the court believed that it was significant that no additional funds were advanced, and that the

interest rate remained the same under the refinanced note.

In the present case, it is uncontroverted that American possessed a purchase money security interest in the debtors' household goods when the goods were originally financed on September 5, 1995. Although the present case does not involve the traditional consolidation of debt found in *In re Freeman,* the Court believes that American converted its purchase money security interest into a nonpurchase money security interest upon refinancing the original loan. In addition to extending the payment terms and reducing the monthly payments, American increased the interest rate, and increased the loan amount by $35.00.

After consideration of the evidence, the Court finds, and it is a ORDERED, ADJUDGED AND DECREED that the debtor's motion to avoid the lien of American be and hereby is GRANTED, and the non-purchase money security interest of American in the debtors' household furnishings is hereby avoided to the extent that such lien impairs the debtors' exemptions.

Done and Ordered.