In re Betsy Bobbit HONCOOP, Debtor.

No. 07–1358.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 19, 2007.

Albert H. Mickler, Bryan K. Mickler, Jacksonville, FL, for Debtor.

Douglas W. Neway, Jacksonville, FL, Trustee.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court upon Debtor's Motion to Value Claim Four (4) of Nicholas Financial, Inc. After a hearing held on July 18, 2007, the Court makes the following Findings of Fact and Conclusions of Law.

### *FINDINGS OF FACT*

On April 3, 2007, Debtor filed a petition under Chapter 13 of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). On October 26, 2004, less than 910 days prior to filing her case, Debtor purchased a 1999 Mercury Mountaineer for $12,000. Debtor financed the vehicle through a Simple Finance Contract that was assigned to Nicholas Financial Inc. ("Creditor"). In conjunction with the purchase of the vehicle, Debtor was charged $500.00 for GAP insurance, which was added to the purchase price. The

total amount of the contract came to $11,339.90, for a period of forty-eight (48) months with an APR of 19.25%. The contract did not allocate the monthly payments of $343.11 between the purchase price and GAP insurance. (Debtor's Ex. 1) (Creditor's Ex. 1).

On May 1, 2007, Creditor filed a Proof of Claim in the amount of $11,499.00. (Creditor's Ex. 1). Debtor subsequently filed a Motion to Value Creditor's Claim Four (4), in which she alleged that the vehicle had a replacement value of $4,570.00. On June 6, 2007, Creditor filed an Objection to Debtor's Motion to Value upon the basis that pursuant to the hanging paragraph of 11 U.S.C. § 1325(a), Debtor was not entitled to value her vehicle for an amount less than what was owed under the contract price.

### CONCLUSIONS OF LAW

Prior to the adoption of BAPCPA, a debtor could bifurcate a motor vehicle secured loan into secured and unsecured components, treating the claim as secured up to the extent of the vehicle's value and unsecured for the remainder. BAPCPA, which took effect on October 17, 2005, added a provision to 11 U.S.C. § 1325(a) commonly referred to as the "hanging paragraph". The hanging paragraph provides in pertinent part:

> "For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day preceding the date of the filing of the petition, and the collateral for

that debt consists of a motor vehicle ... acquired for the personal use of the debtor ..."

In the instant case, there is no dispute that: 1) the collateral for the debt is a motor vehicle; 2) the vehicle was purchased within 910 days preceding the filing of Debtor's bankruptcy petition; and 3) Debtor acquired the vehicle for personal use. The contested issue is whether Creditor has a purchase money security interest in the vehicle.

Debtor argues that the inclusion of the GAP insurance premium into the Simple Finance Contract destroys Creditor's purchase money security interest. As a result, Debtor argues that the hanging paragraph does not apply and she can therefore bifurcate her claim into secured and unsecured parts pursuant to 11 U.S.C. § 506(a)(1). Creditor argues that it has a purchase money security interest in the Vehicle notwithstanding the inclusion of the GAP insurance being financed into the purchase price.

■ Whether a creditor has a purchase money security interest is determined by looking to state law.[1] *In re Price*, 363 B.R. 734 (Bankr.E.D.N.C.2007); *In re Peaslee*, 358 B.R. 545, 551 (Bankr. W.D.N.Y.2006), rev'd on other grounds, 373 B.R. 252, 254 (W.D.N.Y.2007); *In re Murray*, 352 B.R. 340, 346 (Bankr.M.D.Ga. 2006).

Section 679.1031 of the Florida Statutes provides in relevant part:

> (a) "Purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral.

---

1. Creditor asserts that the bankruptcy court cases reliance on and transposition into the Bankruptcy Code of the Uniform Commercial Code's definition of a purchase money security interest is incorrect. Creditor asserts that

were the Court to rely on the UCC definition to define the meaning of purchase money security interest under § 1325, an absurd result would obtain. The Court rejects these assertions.

(b) "Purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.

(2) A security interest in goods is a purchase-money security interest:

(a) To the extent that the goods are purchase-money collateral with respect to that security interest;

(b) If the security interest is in inventory that is or was purchase-money collateral, also to the extent that the security interest secures a purchase-money obligation incurred with respect to other inventory in which the secured party holds or held a purchase-money security interest.....

Fla. St. § 679.1031.

■ Although the main split in authority revolves around whether negative equity represents the purchase price of a vehicle, the issue of GAP insurance has also arisen. *In re Price*, 363 B.R. at 741. In *Price* the Court found that GAP insurance was not part of the purchase price as it was "neither mandatory, a component of the loan agreement, nor a value-enhancing add-on." *Id.* Conversely, a bankruptcy court in Georgia held that payment of an extended service contract, documentary fee and certificate of title fee were to be considered part of the purchase price of the vehicle, due to the relationship between those items and the vehicle. *In re Murray*, 352 B.R. at 349. The Court notes however that GAP insurance was not one of the items considered by the court in *Murray*.

■ Creditor urges the Court to apply the in pari materia doctrine to determine the meaning of "price of the collateral" as set forth in Fla. Stat. § 679.1031. "The doctrine of *in pari materia* is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." *Florida Dep't of State, Div. of Elections v. Martin*, 916 So.2d 763, 768 (Fla.2005). The in pari materia doctrine should only be applied if the statute being construed is ambiguous. *Brown v. State*, 848 So.2d 361, 364 (Fla. Dist.Ct.App. 4th Dist.2003).

■ The Court finds that the term "price of the collateral" as set forth in Fla. St. § 679.1031 is clear on its face. As the court in *Peaslee* pointed out, the term "has the same meaning that it has always had in connection with transactions for the acquisition of any collateral, including a motor vehicle, which is the actual price of the collateral being acquired." *In re Peaslee*, 358 B.R. at 556.

In light of the unambiguous nature of the term "price of the collateral," the Court finds that a resort to the in pari materia doctrine would be improper. Moreover, the Court finds that even if there was ambiguity in the statute, a resort to the Florida Motor Vehicle Sales Finance Act, the statute from which Creditor urges the Court to discern the meaning of "price of collateral," would be improper given that the statute is a consumer protection statute which imposes disclosure requirements on automobile dealers and is not helpful in determining what constitutes a purchase money security interest under the Florida U.C.C. *See In re Pajot*, 371 B.R. 139, 149, 2007 WL 2109892 at * 6 (2007) (rejecting application of other state statutes to define "price" because none were enacted with purpose of defining purchase-money obligation under U.C.C.); *In re Acaya*, 369 B.R. 564, 570 (Bankr. N.D.Cal.2007) (rejecting application of California Automobile Sales Finance Act, a consumer protection statute imposing dis-

closure requirements on dealers, because it was not helpful in determining what constitutes a purchase money security interest under U.C.C.); *In re Peaslee*, 358 B.R. at 556. (rejecting "cash sale price" or any other price defined or referred to in other state or federal statutes because they weren't enacted to define or expand upon U.C.C.'s definition of purchase money security interest.)

Accordingly, the Court must determine whether GAP insurance is part of the "price" of the vehicle or whether it was "value given to enable [Debtor] to acquire rights in the collateral." The Court finds guidance in Comment 3 to the Uniform Commercial Code which provides that "the 'price' of collateral or the 'value given to enable' includes obligations incurred in connection with acquiring rights in the collateral ... The concept of 'purchase money security interest' requires a close nexus between the acquisition of the collateral and a secured obligation ..."

Thus, the Court will address the extent to which a nonessential item, such as GAP insurance, may properly be construed as part of the purchase price. The Court finds that it is only proper to include those nonessential items that enhance or improve the value of the vehicle, such as window tinting or undercoating, in the purchase price. Clearly GAP insurance does not fit into this category, as the sole purpose of GAP insurance is to protect the owner of the vehicle in instances in which the portion of damage done to the vehicle is greater than its value. As the very nature of GAP insurance does not involve the overall enhancement of the vehicle, it cannot be properly construed as part of the purchase price nor does the Court find the requisite close nexus between the inclusion of GAP insurance and the acquisition of the vehicle.

Having found that Debtor's obligation to Creditor is partially a purchase money security interest and partially a non purchase money security interest, the Court must determine the extent of Creditor's purchase money security interest by applying either the dual status or the transformation rule. The dual status rule provides that the secured lender has a purchase money security interest to the extent that the amount financed relates to the purchase price. *In re Price*, 363 B.R. 734, 745 (Bankr.E.D.N.C.2007). However, under the transformation rule the secured creditor is deemed not to possess a purchase money security interest as the non-purchase money component transforms the entire claim into a non-purchase money security interest. *Id.*

In *Southtrust Bank of Alabama Nat'l Ass'n v. Borg–Warner Acceptance Corp.*, 760 F.2d 1240, 1242–43 (11th Cir.1985) the Eleventh Circuit Court of Appeals adopted the transformation rule. The court stated "[w]ithout some guidelines, legislative or contractual, the court should not be required to distill from a mass of transactions the extent to which a security interest is purchase money. Unless a lender contractually provides some method for determining the extent to which each item of collateral secures its purchase money, it effectively gives up its purchase money status." *Id.* at 1243.

Creditor asserts that the law has changed since the Eleventh Circuit's analysis and that the Court has the discretion as to whether to apply the dual status rule or the transformation rule to a partial purchase money security interest. Paragraphs 6 and 7 of Fla. Stat. § 679.1031 provide:

(6) A purchase-money security interest does not lose its status as such, even if:

(a) The purchase-money collateral also secures an obligation that is not a purchase-money obligation;

(b) Collateral that is not purchase-money collateral also secures the purchase-money obligation; or

(c) The purchase-money obligation has been renewed, refinanced, consolidated, or restructured.

(7) A secured party claiming a purchase-money security interest has the burden of establishing the extent to which the security interest is a purchase-money security interest.

■■■ The Court agrees that it has the discretion as to whether to apply the dual status or the transformation rule to a partial purchase money security interest and finds that with respect to GAP insurance, the equitable rule to be applied is the dual status rule. However, because the contract failed to allocate the portion of the monthly payments attributable to GAP insurance and the portion attributable to the vehicle itself, the Court finds it appropriate to remove the GAP insurance in its entirety. Accordingly, Creditor's secured claim will be reduced by $500.00, the amount of the GAP insurance. However, the remainder of Claim 4 is a purchase money security interest, is subject to § 1325(a) and is not permitted to be bifurcated into secured and unsecured parts pursuant to 11 U.S.C. § 506(a)(1).

## CONCLUSION

Although GAP insurance is not part of the purchase price of a vehicle, the dual status rule is the appropriate rule to be applied. The Creditor's secured claim is due to be reduced by the amount of the GAP insurance. The remainder of Creditor's claim is a purchase money security interest, is subject to § 1325(a) and is not permitted to be bifurcated into secured and unsecured parts pursuant to 11 U.S.C.

§ 506(a)(1). A separate order consistent with these Findings of Fact and Conclusions of will be entered.